Nebraska Supreme Court Online Library
www.nebraska.gov/courts/epub/
02/12/2016 08:24 AM CST

State of Nebraska, appellee, v.
Jeffrey Gilliam, appellant.
___ N.W.2d ___

Filed February 12, 2016.    No. S-15-373.

1. **Constitutional Law: Search and Seizure: Motions to Suppress: Appeal and Error.** In reviewing a trial court's ruling on a motion to suppress evidence based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. Regarding historical facts, an appellate court reviews the trial court's findings for clear error. But whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination.

2. **Statutes: Appeal and Error.** Statutory interpretation presents a question of law, for which an appellate court has an obligation to reach an independent conclusion irrespective of the determination made by the court below.

3. **Prior Convictions: Appeal and Error.** On a claim of insufficiency of the evidence, an appellate court, viewing and construing the evidence most favorably to the State, will not set aside a finding of a previous conviction for the purposes of sentence enhancement supported by relevant evidence.

4. **Constitutional Law: Search and Seizure.** The Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution guarantee against unreasonable searches and seizures.

5. **Search and Seizure: Evidence: Trial.** Evidence obtained as the fruit of an illegal search or seizure is inadmissible in a state prosecution and must be excluded.

6. **Constitutional Law: Police Officers and Sheriffs: Search and Seizure: Appeal and Error.** To determine whether an encounter between an officer and a citizen reaches the level of a seizure under the Fourth Amendment to the U.S. Constitution, an appellate court employs the analysis set forth in *State v. Van Ackeren*, 242 Neb. 479,

495 N.W.2d 630 (1993), which describes the three levels, or tiers, of police-citizen encounters.

7. **Constitutional Law: Police Officers and Sheriffs: Search and Seizure**. A tier-one police-citizen encounter involves the voluntary cooperation of the citizen elicited through noncoercive questioning and does not involve any restraint of liberty of the citizen. Because tier-one encounters do not rise to the level of a seizure, they are outside the realm of Fourth Amendment protection.

8. **Police Officers and Sheriffs: Search and Seizure.** A tier-two police-citizen encounter constitutes an investigatory stop as defined by *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). Such an encounter involves a brief, nonintrusive detention during a frisk for weapons or preliminary questioning.

9. **Police Officers and Sheriffs: Search and Seizure: Arrests.** A tier-three police-citizen encounter constitutes an arrest. An arrest involves a highly intrusive or lengthy search or detention.

10. **Constitutional Law: Police Officers and Sheriffs: Search and Seizure.** Tier-two and tier-three police-citizen encounters are seizures sufficient to invoke the protections of the Fourth Amendment to the U.S. Constitution.

11. **Constitutional Law: Search and Seizure.** A seizure in the Fourth Amendment context occurs only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he or she was not free to leave.

12. ____: ____. In addition to situations where an officer directly tells a suspect that he or she is not free to go, circumstances indicative of a seizure may include the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the citizen's person, or the use of language or tone of voice indicating the compliance with the officer's request might be compelled.

13. **Constitutional Law: Police Officers and Sheriffs: Search and Seizure.** A police officer's merely questioning an individual in a public place, such as asking for identification, is not a seizure subject to Fourth Amendment protections, so long as the questioning is carried on without interrupting or restraining the person's movement.

14. **Statutes: Appeal and Error.** Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.

15. **Statutes.** It is not within the province of a court to read a meaning into a statute that is not warranted by the legislative language.

16. **Drunk Driving: Prior Convictions: Words and Phrases.** For the purposes of Neb. Rev. Stat. § 60-6,197.02 (Cum. Supp. 2014), the word "conviction" means a finding of guilt by a jury or a judge, or a judge's acceptance of a plea of guilty or no contest.

17. **Sentences: Prior Convictions: Proof.** In order to prove a prior conviction for purposes of sentence enhancement, the State has the burden to prove the fact of prior convictions by the greater weight of the evidence, and the trial court determines the fact of prior convictions based upon the greater weight of the evidence standard.

18. **Trial: Evidence: Proof.** The greater weight of the evidence requires proof which leads the trier of fact to find that the existence of the contested fact is more likely true than not true.

Appeal from the District Court for Lancaster County: Stephanie F. Stacy, Judge. Affirmed.

Mark E. Rappl for appellant.

Douglas J. Peterson, Attorney General, and Kimberly A. Klein for appellee.

Heavican, C.J., Wright, Connolly, Miller-Lerman, and Cassel, JJ.

Cassel, J.

## I. INTRODUCTION

In this direct appeal, Jeffrey Gilliam challenges the district court's denial of his pretrial motion to suppress evidence and the court's use of a conviction from a Missouri court to enhance his sentence for driving under the influence of alcohol (DUI). We reject Gilliam's first argument, because his initial encounter with police fell outside the realm of the Fourth Amendment. And his argument regarding enhancement fails, because a suspended imposition of sentence in the prior Missouri case qualifies as a "prior conviction" under the pertinent statute. We affirm his conviction and sentence.

## II. BACKGROUND

Gilliam was arrested for DUI after an encounter with a police officer. An information filed in the district court for

Lancaster County charged Gilliam with DUI and alleged that Gilliam had two prior convictions.

### 1. Motion to Suppress

Gilliam filed a pretrial motion to suppress all evidence gathered as a result of his encounter with the police officer. He argued that he was seized and that his seizure was unsupported by reasonable suspicion.

### (a) Hearing

Officer Brock Wagner of the Lincoln Police Department testified at the suppression hearing. Wagner testified that on May 26, 2013, at approximately 5:39 a.m., he received a report from police dispatch that a white Dodge Ram, license plate No. SYD 417, was parked partially on the curb and partially on the street in the area of Ninth and A Streets. Wagner drove to the area in his marked patrol unit to investigate, but he did not see the reported Dodge Ram when he arrived. He turned onto a different street, where he saw the reported Dodge Ram parked legally on the side of the street. It was running, and its lights were on.

Wagner pulled behind the Dodge Ram and activated his patrol unit's overhead lights. He exited his patrol unit, knocked on the window, and directed Gilliam, who was in the driver's seat, to roll down the window, and Gilliam complied. Wagner observed that Gilliam had a strong odor of alcohol on his breath; watery, bloodshot eyes; and slurred speech. Wagner asked to see Gilliam's driver's license, and Gilliam produced it. Wagner then conducted a DUI investigation and arrested Gilliam for DUI. Wagner testified that he was dressed in his uniform, wearing his badge, and carrying a gun when his encounter with Gilliam occurred.

### (b) Order

At the end of the suppression hearing, the district court took the matter under advisement. It later issued a written order overruling Gilliam's motion to suppress. It concluded

that Gilliam's encounter with Wagner did not begin as a seizure; rather, it began as a consensual or "first-tier" encounter that did not implicate Fourth Amendment protections. The district court further concluded that Wagner had reasonable suspicion to expand his initial contact with Gilliam into a DUI investigation.

The district court rejected Gilliam's argument that "'a person in a parked vehicle is seized at the moment when the officer activates the emergency lights.'" It explained that "there are a myriad of circumstances under which police are authorized to use overhead lights—many of which have nothing whatsoever to do with a seizure." And it observed that adopting Gilliam's approach "would have the practical effect of making every police-citizen contact a seizure once overhead lights are activated, regardless of the other circumstances surrounding the contact."

Finally, the district court concluded that Wagner obtained reasonable suspicion to extend the encounter into a DUI investigation when Gilliam rolled down his window. At that point, Wagner observed the strong odor of alcohol and Gilliam's bloodshot eyes and slurred speech, which provided reasonable suspicion of criminal activity.

## 2. Enhancement

Gilliam proceeded to trial and was convicted by a jury of DUI. An enhancement hearing was held, and the State offered two exhibits: a certified copy of a prior DUI conviction from Nebraska and a certified copy of a document from Missouri titled "JUDGMENT OF COURT UPON PLEA OF GUILTY" (Missouri judgment). The Missouri judgment indicated that in 2004, Gilliam appeared with an attorney and pled guilty to driving while intoxicated (DWI) in a Missouri court. It showed that the judge found a factual basis for Gilliam's plea of guilty, approved it, and accepted it. But it also showed that the imposition of his sentence was suspended and that he was placed on probation for 2 years.

Gilliam did not object to the receipt of the Missouri judgment, but argued that because the suspended imposition of a sentence is not considered a final judgment[1] or a conviction[2] in Missouri, it cannot be considered a prior conviction for the purposes of sentence enhancement under Nebraska law. He asked the court to take judicial notice of the Missouri sentencing statute that authorizes courts to suspend the imposition of a sentence,[3] but he otherwise presented no evidence at the hearing.

The district court concluded that the State had met its initial burden of proving Gilliam's prior Missouri DWI conviction by a preponderance of the evidence. It determined that the Missouri judgment "reflects, with requisite trustworthiness, the Missouri court's acceptance of [Gilliam's] guilty plea to the charge of DWI and the court's act of rendering judgment and disposition thereon." It also found that the Missouri conviction was counseled and that the offense would have been a violation of Nebraska's DUI laws.

The district court noted that once the State had met its burden, the burden shifted to Gilliam to introduce evidence "rebutting the statutory presumption that the Missouri [judgment] is valid for purposes of enhancement." Gilliam presented no evidence. Accordingly, the district court found that Gilliam was convicted of DUI or the equivalent offense on two prior occasions. And it concluded that the prior convictions were valid for the purposes of enhancement. The district court sentenced Gilliam to probation for a period of 36 months. The terms of the probation included a 60-day jail sentence, a fine, and other restrictions.

---

[1] See *Yale v. City of Independence*, 846 S.W.2d 193 (Mo. 1993).

[2] *Id.*

[3] Mo. Rev. Stat. § 557.011 (West Cum. Supp. 2016).

Gilliam filed a timely appeal, which we moved to our docket in order to resolve the enhancement issue, which is an issue of first impression.[4]

### III. ASSIGNMENTS OF ERROR

Gilliam assigns that the district court erred in (1) overruling his motion to suppress and (2) concluding that his DWI conviction from the State of Missouri was a valid prior conviction for enhancement purposes.

### IV. STANDARD OF REVIEW

[1] In reviewing a trial court's ruling on a motion to suppress evidence based on a claimed violation of the Fourth Amendment, we apply a two-part standard of review.[5] Regarding historical facts, we review the trial court's findings for clear error.[6] But whether those facts trigger or violate Fourth Amendment protections is a question of law that we review independently of the trial court's determination.[7]

[2] Statutory interpretation presents a question of law, for which an appellate court has an obligation to reach an independent conclusion irrespective of the determination made by the court below.[8]

[3] On a claim of insufficiency of the evidence, an appellate court, viewing and construing the evidence most favorably to the State, will not set aside a finding of a previous conviction for the purposes of sentence enhancement supported by relevant evidence.[9]

---

[4]  See Neb. Rev. Stat. § 24-1106(3) (Reissue 2008).

[5]  *State v. Modlin*, 291 Neb. 660, 867 N.W.2d 609 (2015).

[6]  *Id.*

[7]  *Id.*

[8]  *State v. Taylor*, 286 Neb. 966, 840 N.W.2d 526 (2013).

[9]  *Id.*

## V. ANALYSIS

### 1. Seizure

Gilliam claims that the district court erred when it overruled his motion to suppress the evidence obtained as a result of his encounter with Wagner. He argues that Wagner's activation of his patrol unit's overhead lights was a show of authority that transformed the initial encounter into a seizure for Fourth Amendment purposes. We disagree.

[4,5] The Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution guarantee against unreasonable searches and seizures.[10] Evidence obtained as the fruit of an illegal search or seizure is inadmissible in a state prosecution and must be excluded.[11]

[6] To determine whether an encounter between an officer and a citizen reaches the level of a seizure under the Fourth Amendment to the U.S. Constitution, an appellate court employs the analysis set forth in *State v. Van Ackeren*.[12] *Van Ackeren* describes three levels, or tiers, of police-citizen encounters.[13]

[7] The first tier does not implicate the Fourth Amendment. A tier-one police-citizen encounter involves the voluntary cooperation of the citizen elicited through noncoercive questioning and does not involve any restraint of liberty of the citizen.[14] Because tier-one encounters do not rise to the level of a seizure, they are outside the realm of Fourth Amendment protection.[15]

[8-10] However, second or third tier encounters require constitutional analysis. A tier-two police-citizen encounter

---

[10] *State v. Modlin, supra* note 5.

[11] *State v. Wells*, 290 Neb. 186, 859 N.W.2d 316 (2015).

[12] *State v. Van Ackeren*, 242 Neb. 479, 495 N.W.2d 630 (1993).

[13] See *State v. Wells, supra* note 11.

[14] *Id.*

[15] See *State v. Hedgcock*, 277 Neb. 805, 765 N.W.2d 469 (2009).

constitutes an investigatory stop as defined by *Terry v. Ohio*.[16] Such an encounter involves a brief, nonintrusive detention during a frisk for weapons or preliminary questioning.[17] A tier-three police-citizen encounter constitutes an arrest.[18] An arrest involves a highly intrusive or lengthy search or detention.[19] Tier-two and tier-three police-citizen encounters are seizures sufficient to invoke the protections of the Fourth Amendment to the U.S. Constitution.[20]

[11-13] A seizure in the Fourth Amendment context occurs only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he or she was not free to leave.[21] In addition to situations where an officer directly tells a suspect that he or she is not free to go, circumstances indicative of a seizure may include the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the citizen's person, or the use of language or tone of voice indicating the compliance with the officer's request might be compelled.[22] We have concluded that a police officer's merely questioning an individual in a public place, such as asking for identification, is not a seizure subject to Fourth Amendment protections, so long as the questioning is carried on without interrupting or restraining the person's movement.[23]

---

[16] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). See *State v. Wells, supra* note 11.

[17] *State v. Wells, supra* note 11.

[18] *Id.*

[19] *Id.*

[20] *Id.*

[21] *State v. Hedgcock, supra* note 15.

[22] *Id.* See *United States v. Mendenhall*, 446 U.S. 544, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980).

[23] *Id.* See *State v. Twohig*, 238 Neb. 92, 469 N.W.2d 344 (1991).

The circumstances of the instant case reveal that Wagner was merely questioning Gilliam in a public place. Wagner contacted Gilliam while he was voluntarily parked in a public place in the early morning hours. He approached Gilliam's vehicle alone and on foot. He knocked on the window and asked to see Gilliam's identification. There is no evidence that Wagner displayed his weapon, used a forceful tone of voice, touched Gilliam, or otherwise told Gilliam that he was not free to leave.

Gilliam points to Wagner's activation of his patrol unit's overhead lights as evidence that he was not free to leave. But as the district court observed, there are a variety of reasons that officers may activate their overhead lights. And as the U.S. Court of Appeals for the Seventh Circuit observed in a case with circumstances similar to this one, one reason officers activate their overhead lights before approaching a parked vehicle is "to alert the car's occupants that they [are] going to approach the vehicle."[24] In that similar case, the Seventh Circuit court concluded that where a vehicle was parked and running at night, overhead lights alone were not sufficient to create a seizure. It reasoned that "[w]ithout identifying themselves appropriately to the car's occupants, the officers would have put themselves at risk in approaching a parked car late at night."[25]

Under the circumstances of the instant case, the overhead lights, standing alone, would not have caused a reasonable person to believe that he was not free to leave. A reasonable person, parked on the side of the street at night or in the early morning hours, would understand that there are a variety of reasons an officer may activate his overhead lights before approaching him, including officer safety. Because none of the other circumstances would have made a reasonable person believe that he was not free to leave, we conclude that

---

[24] *U.S. v. Clements*, 522 F.3d 790, 794 (7th Cir. 2008).

[25] *Id*. at 794-95.

Gilliam's encounter with Wagner began as a tier-one encounter. Thus, he was not seized when Wagner approached him, and the Fourth Amendment was not implicated.

Gilliam does not challenge the district court's determination that Wagner obtained reasonable suspicion to expand the initial encounter into a DUI investigation when Gilliam opened his window. Therefore, we conclude that the district court did not err in denying Gilliam's motion to suppress.

## 2. Enhancement

Gilliam claims that the district court erred in using his Missouri DWI conviction to enhance his sentence. He argues that the Missouri judgment does not constitute evidence of a prior conviction for enhancement purposes, because the Missouri Supreme Court has declared that a suspended imposition of sentence does not constitute a "conviction" in Missouri.[26] He also argues that the State did not show that his Missouri DWI conviction was final.

Neb. Rev. Stat. § 60-6,197.03 (Cum. Supp. 2012) delineates the penalties for DUI convictions. Those penalties include enhanced sentences for offenders who have had prior convictions.

The term "prior conviction" is defined by statute.[27] It provides that when a sentence is being imposed for a violation of Nebraska's general prohibition against DUI,[28] prior conviction means "[a]ny conviction under a law of another state if, at the time of the conviction under the law of such other state, the offense for which the person was convicted would have been a violation of" one of Nebraska's DUI statutes.[29] It does not define the word "conviction."

---

[26] See *Yale v. City of Independence, supra* note 1.

[27] Neb. Rev. Stat. § 60-6,197.02 (Cum. Supp. 2014).

[28] Neb. Rev. Stat. § 60-6,196 (Reissue 2010).

[29] § 60-6,197.02(1)(a)(i)(C).

[14,15] Before we can review the district court's finding that the State proved Gilliam's prior conviction in Missouri, we must first determine what the word "conviction" means within the phrase, "[a]ny conviction under a law of another state." Statutory language is to be given its plain and ordinary meaning, and this court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.[30] It is not within the province of this court to read a meaning into a statute that is not warranted by the legislative language.[31]

We often turn to dictionaries to ascertain a word's plain and ordinary meaning.[32] Black's Law Dictionary defines "conviction" as "[t]he act or process of judicially finding someone guilty of a crime; the state of having been proved guilty . . . ."[33] Webster's Third New International Dictionary defines "conviction" as "the act of proving, finding, or adjudging a person guilty of an offense or crime."[34] These definitions square with our understanding of "conviction" in prior cases. We have consistently stated that "[a] plea of guilty accepted by the court is a conviction or the equivalent of a conviction of the highest order. The effect of it is to authorize the imposition of the sentence prescribed by law on a verdict of guilty

---

[30] *State v. Taylor, supra* note 8.

[31] *Id.*

[32] See, e.g., *Stick v. City of Omaha*, 289 Neb. 752, 857 N.W.2d 561 (2015) (citing Black's Law Dictionary for plain meaning of "public place"); *Rodehorst Bros. v. City of Norfolk Bd. of Adjustment*, 287 Neb. 779, 844 N.W.2d 755 (2014) (citing Webster's Dictionary for plain meaning of "discontinue"); *Mathews v. Mathews*, 267 Neb. 604, 676 N.W.2d 42 (2004) (citing several dictionaries for plain meaning of "indigent"); *Payless Bldg. Ctr. v. Wilmoth*, 254 Neb. 998, 581 N.W.2d 420 (1998) (citing Webster's Third New International Dictionary for plain meaning of "individual").

[33] Black's Law Dictionary 408 (10th ed. 2014).

[34] Webster's Third New International Dictionary of the English Language, Unabridged 499 (1993).

of the crime charged."[35] We have also stated that "a plea of no
contest, when voluntarily entered and accepted by the court,
is a conviction, empowering the court to impose the sentence
authorized by statute."[36]

[16] We apply the plain and ordinary meaning of the word
"conviction" to the statute before us. For the purposes of
§ 60-6,197.02, the word "conviction" means a finding of guilt
by a jury or a judge, or a judge's acceptance of a plea of guilty
or no contest.

[17,18] We now review the district court's finding that the
State had met its burden of proving Gilliam's prior conviction.
In order to prove a prior conviction for purposes of sentence
enhancement, the State has the burden to prove the fact of
prior convictions by the greater weight of the evidence, and
the trial court determines the fact of prior convictions based
upon the greater weight of the evidence standard.[37] The greater
weight of the evidence requires proof which leads the trier
of fact to find that the existence of the contested fact is more
likely true than not true.[38] On an appeal of a sentence enhance-
ment hearing, we view and construe the evidence most favor-
ably to the State.[39]

Regarding the process by which the prior conviction must
be proved, § 60-6,197.02 provides: "The prosecutor shall
present as evidence for purposes of sentence enhancement a

---

[35] *Stewart v. Ress*, 164 Neb. 876, 881, 83 N.W.2d 901, 904 (1957). See,
also, *State v. Hall*, 268 Neb. 91, 679 N.W.2d 760 (2004); *State v. Ondrak*,
212 Neb. 840, 326 N.W.2d 188 (1982); *Taylor v. State*, 159 Neb. 210, 66
N.W.2d 514 (1954). Cf. *State v. Hess*, 261 Neb. 368, 622 N.W.2d 891
(2001).

[36] *State v. McKain*, 230 Neb. 817, 818, 434 N.W.2d 10, 11 (1989).

[37] See *State v. Taylor, supra* note 8. See, also, *Flores v. Flores-Guerrero*,
290 Neb. 248, 253, 859 N.W.2d 578, 583 (2015) ("preponderance of the
evidence" is equivalent of "'"greater weight"' of the evidence").

[38] See *State v. Taylor, supra* note 8.

[39] *Id.*

court-certified copy or an authenticated copy of a prior conviction in another state. The court-certified or authenticated copy shall be prima facie evidence of such prior conviction."[40] That section also directs that once the prosecutor has presented prima facie evidence, "[t]he convicted person shall be given the opportunity to review the record of his or her prior convictions, bring mitigating facts to the attention of the court prior to sentencing, and make objections on the record regarding the validity of such prior convictions."[41]

We conclude that the district court's finding was supported by relevant evidence. The State introduced the Missouri judgment, which indicates that Gilliam pled "guilty as charged" to DWI in Missouri and that the judge accepted his plea. Therefore, the Missouri judgment constitutes a certified copy of a prior conviction in another state and is prima facie evidence of the prior conviction. And Gilliam does not claim that the Missouri conviction would not have been a violation of Nebraska's DUI laws. Thus, the State met its burden, and the district court did not err in enhancing Gilliam's sentence.

Gilliam's two arguments that we should reach a contrary conclusion are meritless. First, Gilliam argues that we must analyze Missouri law to determine whether the Missouri judgment constitutes a "conviction under a law of another state" under § 60-6,197.02. We disagree. The meaning of the phrase is plain—it requires a finding of guilt or an acceptance of a guilty or no contest plea under a law of another state. That is satisfied here. The plain terms of the statute do not require an analysis of Missouri law.

And even if we were to examine Missouri law, we would reach the same conclusion. In a Missouri Supreme Court decision,[42] the court addressed the term "conviction" as used in

---

[40] § 60-6,197.02(2).

[41] § 60-6,197.02(3).

[42] *Yale v. City of Independence, supra* note 1.

a municipality's employee manual. It was in that context that the court concluded that a suspended imposition of sentence was not a conviction. But the court observed that the Missouri Legislature had provided otherwise in specific instances. And, particularly pertinent here, the court recognized that a specific Missouri statute[43] treated a plea of guilty, finding of guilt, or disposition of suspended imposition of sentence as a "conviction, or 'final disposition,' in alcohol or drug related driving offenses."[44]

A change in Missouri's statutory framework for enhancement of intoxication-related traffic offenses, enacted after the date of Gilliam's conviction, does not change the result. Although Missouri no longer looks to a "conviction" in intoxication-related traffic offenses for purposes of enhancement, it still treats a suspended imposition of sentence as an event qualifying as a necessary predicate for enhancement. The Missouri Legislature treated a suspended imposition of sentence in an intoxication-related traffic offense as a "conviction" sufficient to enhance an offender's sentence for a subsequent intoxication-related traffic offense until 2008. In 2008, it changed the terminology of its enhancement statute.[45] It removed the word "conviction" and substituted definitions employing the phrases "has pleaded guilty to or has been found guilty of" and "intoxication-related traffic offenses."[46] But despite the changes in nomenclature, the current Missouri statute states that a "suspended imposition of sentence" is to be treated as a "prior plea of guilty or finding of guilt."[47] Thus, the effect remains the same—Missouri considers a suspended imposition of sentence for an intoxication-related

---

[43] Mo. Rev. Stat. § 577.051.1 (1986).

[44] *Yale v. City of Independence, supra* note 1, 846 S.W.2d at 195.

[45] See H.B. 1715, 94th Gen. Assemb., 2d Reg. Sess. (Mo. 2008).

[46] Mo. Rev. Stat. § 577.023 (West 2011).

[47] § 577.023(16).

traffic offense sufficient to enhance a sentence for a sub-
sequent intoxication-related traffic offense. And, ultimately,
the question is not whether Missouri would characterize the
2004 event as a "conviction" under its current enhancement
statute, but whether it qualifies as a prior conviction under
the Nebraska statute. We have already explained why it does,
and the change in Missouri's terminology does not affect
our conclusion.

Second, Gilliam claims that the State was required to estab-
lish that the Missouri judgment was a final conviction. In this
argument, he does not rely upon Missouri law, which, as we
have noted, does not support his assertion. Rather, he recites
that in Nebraska, a judgment is not final until a convicted
person is sentenced.[48] And he argues that because the Missouri
judgment indicates that his sentence was suspended, the State
did not sufficiently prove a final conviction.

Gilliam relies on *State v. Estes*.[49] There, we cited *Nelson
v. State*[50] for the following rule: "To constitute a basis for
enhancement of punishment on a charge of a second or sub-
sequent offense, the prior conviction relied upon for enhance-
ment must be a final conviction."[51] In *Nelson*, we said:
"[W]here the evidence of one of the former violations charged
shows that proceedings in error are pending and undisposed
of which might result in a reversal of such judgment, such
evidence is insufficient and incompetent to establish a for-
mer conviction."[52]

The rule pronounced in *Nelson* and repeated in *Estes*
applies when the evidence presented by the State shows that
a prior conviction is pending on appeal. The record in the

---

[48] See *State v. Kaba*, 210 Neb. 503, 315 N.W.2d 456 (1982).

[49] *State v. Estes*, 238 Neb. 692, 472 N.W.2d 214 (1991).

[50] *Nelson v. State*, 116 Neb. 219, 216 N.W.2d 556 (1927).

[51] *State v. Estes, supra* note 49, 238 Neb. at 695, 472 N.W.2d at 216.

[52] *Nelson v. State, supra* note 50, 116 Neb. at 221, 216 N.W.2d at 557.

instant case does not indicate that an appeal is pending, and Gilliam does not contend that he has appealed the Missouri conviction. Thus, *Nelson* and *Estes* are inapplicable. The terms of § 60-6,197.02 do not require the prosecution to prove that an appeal is not pending or that the conviction is otherwise final. We will not read into a statute requirements that are not there.

## VI. CONCLUSION

We conclude that the district court did not err by overruling Gilliam's motion to suppress. Further, we conclude that the district court did not err in using Gilliam's Missouri conviction to enhance his sentence. Therefore, we affirm.

AFFIRMED.

STACY, J., not participating.