Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/29/2016 09:07 AM CDT

State of Nebraska, appellee,
v. Josip Milos, appellant.
___ N.W.2d ___

Filed July 29, 2016.    No. S-15-1025.

1. **Constitutional Law: Search and Seizure: Motions to Suppress: Appeal and Error.** In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protection is a question of law that an appellate court reviews independently of the trial court's determination.

2. **Constitutional Law: Search and Seizure.** The determination of whether the facts and circumstances constitute a voluntary consent to search, satisfying the Fourth Amendment, is a question of law.

3. **Criminal Law: Evidence: Appeal and Error.** The relevant question when an appellate court reviews a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

4. **Constitutional Law: Search and Seizure.** The Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution guarantee against unreasonable searches and seizures.

5. **Search and Seizure: Evidence: Trial.** Evidence obtained as the fruit of an illegal search or seizure is inadmissible in a state prosecution and must be excluded.

6. **Constitutional Law: Police Officers and Sheriffs: Search and Seizure.** A tier-one police-citizen encounter involves the voluntary cooperation of the citizen elicited through noncoercive questioning and does not involve any restraint of liberty of the citizen. Because tier-one encounters do not rise to the level of a seizure, they are outside the realm of Fourth Amendment protection.

7. **Police Officers and Sheriffs: Search and Seizure.** A tier-two police-citizen encounter involves a brief, nonintrusive detention during a frisk for weapons or preliminary questioning.

8. **Police Officers and Sheriffs: Search and Seizure: Arrests.** A tier-three police-citizen encounter constitutes an arrest, which involves a highly intrusive or lengthy search or detention.

9. **Constitutional Law: Police Officers and Sheriffs: Search and Seizure.** Tier-two and tier-three police-citizen encounters are seizures sufficient to invoke the protections of the Fourth Amendment to the U.S. Constitution.

10. **Constitutional Law: Search and Seizure.** A seizure in the Fourth Amendment context occurs only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he or she was not free to leave.

11. **Police Officers and Sheriffs: Search and Seizure.** In addition to situations where an officer directly tells a suspect that he or she is not free to go, circumstances indicative of a seizure may include the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the citizen's person, or the use of language or tone of voice indicating the compliance with the officer's request might be compelled.

12. **Constitutional Law: Police Officers and Sheriffs: Search and Seizure.** An officer's merely questioning an individual in a public place, such as asking for identification, is not a seizure subject to Fourth Amendment protections, so long as the questioning is carried on without interrupting or restraining the person's movement.

13. **Constitutional Law: Warrantless Searches: Search and Seizure.** Warrantless searches and seizures are per se unreasonable under the Fourth Amendment, but a search undertaken with consent is a recognized exception.

14. **Search and Seizure.** In order for a consent to search to be effective, it must be a free and unconstrained choice and not the product of a will overborne.

15. ____. Whether consent to search was voluntary is to be determined from the totality of the circumstances surrounding the giving of consent.

16. ____. Once given, consent to search may be withdrawn.

17. ____. Withdrawal of consent to search need not be communicated by "magic words," but an intent to withdraw consent must be made by unequivocal act or statement.

18. **Constitutional Law: Police Officers and Sheriffs: Search and Seizure.** The standard for measuring the scope of a suspect's consent to search under the Fourth Amendment is that of objective reasonableness—what

would the typical reasonable person have understood by the exchange between the officer and the suspect?

19. **Police Officers and Sheriffs: Search and Seizure.** Conduct withdrawing consent must be an act clearly inconsistent with the apparent consent to search, an unambiguous statement challenging the officer's authority to conduct the search, or some combination of both.

20. **Warrantless Searches: Evidence.** A search of evidence in plain view is a recognized warrantless search exception.

21. **Police Officers and Sheriffs: Search and Seizure: Evidence.** A warrantless seizure is justified under the plain view doctrine if (1) a law enforcement officer has a legal right to be in the place from which the object subject to seizure could be plainly viewed, (2) the seized object's incriminating nature is immediately apparent, and (3) the officer has a lawful right of access to the seized object itself.

Appeal from the District Court for Lancaster County: Robert R. Otte, Judge. Affirmed.

Mariclare Thomas for appellant.

Douglas J. Peterson, Attorney General, and George R. Love for appellee.

Heavican, C.J., Wright, Miller-Lerman, Cassel, Stacy, and Kelch, JJ.

Cassel, J.

## INTRODUCTION

Josip Milos appeals the overruling of his motion to suppress and his conviction for possession of a controlled substance. The totality of the circumstances demonstrates that (1) Milos' interaction with law enforcement was a tier-one police-citizen encounter and (2) he consented to a search. After Milos withdrew consent by placing his hand in the pocket being searched, the search did not continue. Rather, Milos threw the controlled substance to the ground in plain view. Because the district court did not err in overruling the motion to suppress and the evidence was sufficient to convict Milos, we affirm.

## BACKGROUND

On March 17, 2014, at some point after 9 p.m., three law enforcement officers in plain clothes and an undercover vehicle were in the area of a carwash that was known for drug transactions. They were not investigating any report of criminal activity at that time, but, rather, were patrolling usual spots where drug transactions had occurred in the past. The officers turned into the carwash and observed two vehicles, a Dodge Caravan and a Chevrolet Tahoe, leave the parking lot. The officers lost track of the Tahoe and decided to follow the Caravan. As they were following the Caravan, two of the officers looked up the Tahoe's license plate on a mobile data terminal and discovered it belonged to an individual known to the officers as "a possible party who may be dealing in methamphetamine."

The Caravan appeared to approach the drive-through window of a fast-food restaurant and then parked in the restaurant's parking lot. The officers parked two stalls away from the Caravan. As one officer approached the passenger side of the Caravan, another officer spoke with Milos, the driver. The officer, who had his badge displayed, asked Milos if he would be "willing" to show his identification and to step out of the vehicle. Milos complied.

The officer asked if he could search Milos' pockets, and Milos gave permission. The officer thanked Milos "since this is all consensual" and again asked Milos if he would be willing to let the officer search Milos' pockets. Milos said "yes" and turned to face the car. When the officer tried to search Milos' front right pants pocket, Milos "jammed" his own hand into the pocket. The officer was concerned that Milos was reaching for a weapon, so the officer removed Milos' hand from the pocket and asked what he was doing. Milos replied that he was getting his cell phone charger. At that time, Milos had a cell phone charger in his right hand, which was in a tightly closed fist. Milos then "swiped" his left hand over his

right fist and threw a plastic baggie of what appeared to be methamphetamine on the ground. According to the officer, Milos did not withdraw his consent or attempt to limit the scope of the search. The State subsequently charged Milos with possession of a controlled substance.

Milos filed a motion to suppress statements and physical evidence obtained during the search. Following a hearing, the district court overruled the motion. The court found that consent was freely and voluntarily given. With regard to withdrawal of consent, the court stated:

> The instantaneous act of the officer starting into the pocket, [Milos] doing the same thing, whether that is particularly withdrawal of consent, I think the officer has some right . . . to worry about personal safety. At that point the hands come out of the pocket, . . . [Milos] then pulled his hands out of the pocket and discarded the baggie and [Milos] threw the baggie on the ground.
>
> . . . [W]hether or not that consent was revoked or not, I'm not sure is relevant, maybe the Supreme Court will say it's relevant, but I don't think that's relevant because the hands come out of the pocket and then the drugs are displayed. To the extent — and I understand the factual nuances to the extent that [Milos] says at any point stop that, I think the officer has to stop. But the point where everybody reaches for the pocket and the drugs come out, I think that kind of instantaneous thing gives me at least enough to overrule the motion to suppress.

The case proceeded to a bench trial. The parties stipulated to the evidence, and Milos preserved his objection raised in the motion to suppress. The district court convicted Milos of possession of a controlled substance and sentenced Milos to probation.

Milos appealed, and we moved the case to our docket.[1]

---

[1] See Neb. Rev. Stat. § 24-1106(3) (Supp. 2015).

## ASSIGNMENTS OF ERROR

Milos assigns that the district court erred in overruling his motion to suppress and in finding sufficient evidence to convict him.

## STANDARD OF REVIEW

[1] In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protection is a question of law that an appellate court reviews independently of the trial court's determination.[2]

[2] The determination of whether the facts and circumstances constitute a voluntary consent to search, satisfying the Fourth Amendment, is a question of law.[3]

[3] The relevant question when an appellate court reviews a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[4]

## ANALYSIS

[4,5] The issues in this case center on the legality of the seizure of the methamphetamine. The Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution guarantee against unreasonable searches and seizures.[5] Evidence obtained as the fruit of an illegal search or seizure is inadmissible in a state prosecution and must be excluded.[6] Milos argues that the baggie of drugs should have

---

[2] *State v. Woldt*, 293 Neb. 265, 876 N.W.2d 891 (2016).

[3] *State v. Tyler*, 291 Neb. 920, 870 N.W.2d 119 (2015).

[4] *State v. Jones*, 293 Neb. 452, 878 N.W.2d 379 (2016).

[5] *State v. Gilliam*, 292 Neb. 770, 874 N.W.2d 48 (2016).

[6] *Id.*

been suppressed, because it was discovered as the result of an illegal search and seizure.

## POLICE-CITIZEN ENCOUNTER

[6-9] We have described three tiers of police-citizen encounters.[7] A tier-one police-citizen encounter involves the voluntary cooperation of the citizen elicited through non-coercive questioning and does not involve any restraint of liberty of the citizen. Because tier-one encounters do not rise to the level of a seizure, they are outside the realm of Fourth Amendment protection.[8] A tier-two police-citizen encounter involves a brief, nonintrusive detention during a frisk for weapons or preliminary questioning.[9] A tier-three police-citizen encounter constitutes an arrest, which involves a highly intrusive or lengthy search or detention.[10] Tier-two and tier-three police-citizen encounters are seizures sufficient to invoke the protections of the Fourth Amendment to the U.S. Constitution.[11]

[10-12] A seizure in the Fourth Amendment context occurs only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he or she was not free to leave.[12] In addition to situations where an officer directly tells a suspect that he or she is not free to go, circumstances indicative of a seizure may include the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the citizen's person, or the use of language or tone of voice indicating the compliance with the officer's request might be compelled.[13]

---

[7] See *State v. Van Ackeren*, 242 Neb. 479, 495 N.W.2d 630 (1993).

[8] *State v. Gilliam, supra* note 5.

[9] See *id.*

[10] See *id.*

[11] *Id.*

[12] *Id.*

[13] *Id.*

But an officer's merely questioning an individual in a public place, such as asking for identification, is not a seizure subject to Fourth Amendment protections, so long as the questioning is carried on without interrupting or restraining the person's movement.[14]

The circumstances of the encounter demonstrate that it was a tier-one encounter. We have already recited the basic facts, which we do not repeat. It was dark outside, and the officers did not use their vehicle to trap the Caravan. The officer who spoke with Milos did not display a gun and did not direct Milos to step out of the vehicle. There is no evidence that the officer used a forceful tone of voice, touched Milos, or told Milos that he was not free to leave.

An officer's request that an individual step out of a parked vehicle does not automatically transform a tier-one police-citizen encounter into a tier-two encounter. Milos cites to a case from this court where we determined that an initial, tier-one encounter became a tier-two investigatory stop when the driver was asked to step out of his vehicle and to submit to field sobriety tests.[15] But there is no hard-and-fast rule that such a request results in a tier-two encounter; rather, the determination is driven by the totality of the circumstances. And as we discussed above, the totality of the circumstances lead to the conclusion that Milos was not seized. The circumstances surrounding the officer's request would not have made a reasonable person believe that he or she was not free to leave. We conclude that Milos was not seized when the officer asked if he would be willing to step out of the vehicle.

## Search

[13-15] The officer did not need reasonable suspicion of criminal activity in order to search Milos, because Milos gave consent to search. Warrantless searches and seizures

---

[14] See *id.*

[15] See *State v. Casillas*, 279 Neb. 820, 782 N.W.2d 882 (2010).

are per se unreasonable under the Fourth Amendment, but a search undertaken with consent is a recognized exception.[16] In order for a consent to search to be effective, it must be a free and unconstrained choice and not the product of a will overborne.[17] Whether consent to search was voluntary is to be determined from the totality of the circumstances surrounding the giving of consent.[18] Here, the officer denied using any threats, coercion, or force to obtain consent. The officer asked if Milos would be "willing" to let him search Milos' pockets, and Milos agreed that the officer could do so. Milos reaffirmed this permission even after the officer thanked him and mentioned that "this is all consensual." Based on the totality of the circumstances, Milos voluntarily consented to the search of his pockets.

[16-18] Once given, consent to search may be withdrawn.[19] Withdrawal of consent need not be communicated by "magic words," but an intent to withdraw consent must be made by unequivocal act or statement.[20] The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of objective reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?[21]

[19] Conduct withdrawing consent must be an act clearly inconsistent with the apparent consent to search, an unambiguous statement challenging the officer's authority to conduct the search, or some combination of both.[22] And an officer conducting a consensual search has no authority to command the person being searched to stop interfering with

---

[16] See *State v. Smith*, 279 Neb. 918, 782 N.W.2d 913 (2010).

[17] *State v. Tyler, supra* note 3.

[18] *Id.*

[19] See *State v. Smith, supra* note 16.

[20] See *State v. Modlin*, 291 Neb. 660, 867 N.W.2d 609 (2015).

[21] *Id.*

[22] *State v. Smith, supra* note 16.

the search.[23] We have explained that a "suspect's deliberate interference with the search—actions designed to prevent law enforcement from searching further—are clearly sufficient to communicate a withdrawal of consent, because no reasonable observer could conclude that the suspect wanted the search to continue."[24]

Here, Milos placed his hand in the same pocket that the officer was trying to search, thereby interfering with the officer's ability to search. The officer then removed Milos' hand. These actions are inconsistent with a consensual search. The district court did not clearly decide whether Milos withdrew his consent, but we conclude that his actions sufficiently demonstrated a withdrawal of consent.

## Plain View

Although Milos withdrew his consent to the search, the baggie of drugs was not discovered due to a continuation of the search. Rather, the evidence became plainly viewable due to Milos' own actions. After removing Milos' hand from the pocket, the officer saw Milos throw a baggie of what appeared to be methamphetamine on the ground.

[20,21] A search of evidence in plain view is another recognized warrantless search exception.[25] A warrantless seizure is justified under the plain view doctrine if (1) a law enforcement officer has a legal right to be in the place from which the object subject to seizure could be plainly viewed, (2) the seized object's incriminating nature is immediately apparent, and (3) the officer has a lawful right of access to the seized object itself.[26]

All three elements were satisfied here. The officer was lawfully in the restaurant's parking lot. The baggie was in plain

---

[23] *Id.*

[24] *Id.* at 932, 782 N.W.2d at 926.

[25] *State v. Borst*, 281 Neb. 217, 795 N.W.2d 262 (2011).

[26] *State v. Reinpold*, 284 Neb. 950, 824 N.W.2d 713 (2013).

view from that location. Based on the officer's training and experience, the incriminating nature of the baggie containing a crystalline substance that appeared to be methamphetamine was immediately apparent. And because the baggie was thrown in the same public area, the officer had a lawful right of access to the baggie.

The evidence was in plain view due to Milos' act of throwing the baggie on the ground. The district court did not err in overruling Milos' motion to suppress.

### Sufficiency of Evidence

Milos premised his claim of insufficiency of the evidence on his argument that the evidence should have been suppressed. But we have already rejected his premise. It necessarily follows that his insufficiency argument fails. And he does not otherwise argue that the admitted evidence, including the baggie of methamphetamine, was insufficient to convict him of possession of a controlled substance. It clearly was sufficient.

### CONCLUSION

We conclude that Milos was not seized for purposes of the Fourth Amendment, because the totality of the circumstances demonstrates that his interaction with law enforcement was a tier-one police-citizen encounter. The officer did not need reasonable suspicion of criminal activity to search Milos, because he consented to the search. Although Milos withdrew his consent to the search by placing his hand in the pocket being searched, there is no evidence that the officer continued the search after that point. Rather, the baggie of methamphetamine was in plain view of the officer after Milos threw it on the ground. Because the district court did not err in overruling the motion to suppress and the evidence was sufficient to convict Milos, we affirm.

Affirmed.

Connolly, J., not participating.