IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

STATE V. DUBAS

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

JUSTIN T. DUBAS, APPELLANT.

Filed November 1, 2016.    No. A-15-1165.

Appeal from the District Court for Lancaster County: JOHN A. COLBORN, Judge. Affirmed.

Korey L. Reiman, of Reiman Law Firm, for appellant.

Douglas J. Peterson, Attorney General, and Siobhan E. Duffy for appellee.

INBODY and PIRTLE, Judges, and MCCORMACK, Retired Justice.

INBODY, Judge.

### INTRODUCTION

Justin T. Dubas appeals from an order of the district court for Lancaster County overruling his motion to suppress evidence and finding him guilty of driving during revocation, first offense, after a stipulated bench trial. On appeal, Dubas argues the district court erred in overruling his motion to suppress because law enforcement lacked reasonable suspicion necessary for a constitutionally sufficient stop.

### STATEMENT OF FACTS

The State filed an information charging Dubas with driving during revocation, first offense. Dubas filed a motion to suppress evidence obtained pursuant to the traffic stop that led to his arrest, alleging law enforcement lacked reasonable suspicion to justify the stop.

The evidence adduced at the suppression hearing established that on September 11, 2014, at approximately 12:43 p.m., Lancaster County Deputy Sheriff Nick Heitman was preparing to

- 1 -

leave his residence after eating lunch. While sitting in his marked patrol cruiser in his driveway, Deputy Heitman observed an unfamiliar white Chevy truck traveling westbound through his neighborhood on a public roadway. Deputy Heitman ran the license plate through a registration check using the mobile data terminal in his cruiser.

Deputy Heitman testified that when he ran the truck's license plate information, he discovered it was registered to a woman named Ashley Beetem. Deputy Heitman noticed the car was being driven by a male, with dark facial hair, wearing a black headband. Deputy Heitman testified he was able to observe the driver from his driveway for a few seconds while the truck passed by. Deputy Heitman checked Beetem's known associates on the law enforcement database. Deputy Heitman testified that the known associates list consists of grouping people by case number or incident in the database. Upon reviewing Beetem's known associates, Deputy Heitman saw Dubas' name on the list. Heitman was able to view Dubas' photograph through the DMV database information and believed Dubas to be the same person driving the truck. Dubas testified he was driving the truck. Deputy Heitman reviewed Dubas' information on the database and learned Dubas' driver's license had been suspended on September 26, 2012. Consequently, Deputy Heitman left his driveway to locate the truck. Deputy Heitman did not activate his overhead lights or siren.

Deputy Heitman located the truck parked up against the house of a nearby residence and parked his cruiser in the driveway. Deputy Heitman testified he did not attempt to, or actually park in a way to, box in the truck with his cruiser, but Dubas testified he felt Deputy Heitman was trying to block the truck from leaving. Deputy Heitman exited his cruiser to make contact with Dubas, who was outside the truck. Dubas was working at the residence, installing a roof and skylights. Deputy Heitman asked for Dubas' identification and Dubas complied. Deputy Heitman told Dubas that his driver's license was suspended. Dubas told Deputy Heitman he had a child in common with Beetem, that she was not aware of his suspended license, and that he told her that he had a work permit to drive. Dubas asked if he could make some telephone calls for work arrangements at the residence before Deputy Heitman placed him into custody. Deputy Heitman agreed and allowed Dubas to use his cell phone and to show other employees how to install the skylight prior to any potential rain until he was placed in custody approximately 10 minutes later. At the conclusion of his investigation, Deputy Heitman took Dubas into custody and transported him to the Lancaster County Jail.

In overruling and denying Dubas' motion to suppress, the trial court determined that Deputy Heitman had probable cause to believe Dubas was operating a motor vehicle on a public road and to arrest him for driving under a suspended license. The trial court also determined that at the very least, Deputy Heitman had a reasonable suspicion based on the totality of the circumstances to make contact with Dubas and to make a further inquiry as to whether a crime actually occurred.

## ASSIGNMENTS OF ERROR

Dubas assigns that the trial court erred in overruling his motion to suppress evidence because Deputy Heitman lacked reasonable suspicion for a constitutionally sufficient stop. Dubas also claims the factual findings of the trial court were clearly erroneous. However, Dubas does not

argue the factual findings of the trial court assignment of error in his appellate brief. Accordingly, we only address his arguments with respect to the motion to suppress. An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court. *State v. Turner*, 288 Neb. 249, 847 N.W.2d 69 (2014).

## STANDARD OF REVIEW

In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination. *State v. Tyler*, 291 Neb. 920, 870 N.W.2d 119 (2015).

## ANALYSIS

Dubas argues the trial court erred in overruling his motion to suppress evidence. He contends the evidence obtained from the stop leading to his arrest for driving during revocation should have been suppressed because Deputy Heitman did not have a reasonable, articulable suspicion that he was engaged in criminal activity, thereby violating his Fourth Amendment rights. Specifically, Dubas claims the stop of the truck was unlawful because Deputy Heitman did not observe any traffic violations and Dubas outwardly exhibited compliance with traffic laws. Dubas argues Deputy Heitman's sole justification for running the license plate through a registration check was his judgment that the truck Dubas was driving was unfamiliar to his neighborhood. Dubas additionally claims he did not feel free to leave because Deputy Heitman's cruiser blocked the driveway.

The Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution guarantee against unreasonable searches and seizures. *State v. Milos*, 294 Neb. 375, 882 N.W.2d 696 (2016). This guarantee limits investigatory stops to those made upon an articulable suspicion of criminal activity. *State v. Wollam*, 280 Neb. 43, 783 N.W.2d 612 (2010). A seizure in the Fourth Amendment context occurs only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he or she was not free to leave. *State v. Milos, supra*.

No reasonable suspicion is required in order to conduct a computerized identification check occurring without a seizure. *State v. Soukharith*, 253 Neb. 310, 570 N.W.2d 344 (1997). Fourth Amendment rights are not implicated by law enforcement simply conducting a computerized identification check prior to a seizure. *Id.*

An investigative stop is limited to brief, nonintrusive detention during a frisk for weapons or preliminary questioning. *State v. Lamb*, 280 Neb. 738, 789 N.W.2d 918 (2010). While this type of encounter is considered a seizure and invokes Fourth Amendment safeguards, because of its less intrusive character, it requires only that the stopping officer have specific and articulable facts sufficient to give rise to reasonable suspicion that a person has committed or is committing a crime. *Id.* An investigatory stop and resulting inquiry must be reasonably related in scope to the justification for their initiation. *State v. Au*, 285 Neb. 797, 829 N.W.2d 695 (2013). Reasonable

suspicion entails some minimal level of objective justification for detention, something more than an inchoate and unparticularized hunch, but less than the level of suspicion required for probable cause. *Id*. Where police have reasonable suspicion, they may pursue their investigation either to confirm their suspicion or to dispel the suspicion that crime is afoot. *State v. Ortiz*, 257 Neb. 784, 600 N.W.2d 805 (1999). Typically, this means that the officer may ask the person stopped a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions. *State v. Au, supra*. See, also, *State v. McGinnis*, 8 Neb. App. 1014, 608 N.W.2d 605 (2000).

An investigatory stop must be justified by an objective manifestation that the person stopped is, has been, or is about to be engaged in criminal activity. *State v. Wollam, supra.* In determining what cause is sufficient to authorize police to stop a person, the totality of the circumstances must be taken into account. *State v. Rodriguez*, 288 Neb. 878, 852 N.W.2d 705 (2014). The assessment of the totality of the circumstances includes all of the objective observations and considerations, as well as the suspicion drawn by a trained and experienced police officer by inference and deduction that the individual stopped is or has been or is about to be engaged in criminal behavior. *State v. Wollam, supra.*

In this instance, Deputy Heitman made a simple inquiry on the DMV database based on the "known associates" list, without turning on his cruiser's lights or stopping Dubas before the inquiry. As Deputy Heitman conducted the DMV database review, Dubas continued driving without Deputy Heitman's interference and was not aware that Deputy Heitman was reviewing the DMV database. Deputy Heitman's inquiry to the "known associates" list and DMV database allowed him to identify Dubas by his picture and find that he had a suspended license, prior to being approached.

Moreover, we conclude that based on the totality of the circumstances, Deputy Heitman had a reasonable and articulable suspicion that Dubas was operating a motor vehicle on a suspended license and was, therefore, committing a crime which allowed Deputy Heitman to initiate contact with Dubas. Further, an investigatory stop was justified to allow Deputy Heitman to investigate his reasonable suspicion that Dubas was driving the truck on a suspended license. Since the purpose of an investigative stop is to clarify ambiguous situations, even when it is equally probable that the vehicle or its occupants are innocent of any wrongdoing, law enforcement must be permitted to act before their reasonable belief is verified by escape or fruition of the harm it was their duty to prevent. See *State v. Bowers*, 250 Neb. 151, 548 N.W.2d 725 (1996). Deputy Heitman testified that he looked at the driver of the truck, compared his observations to the photograph he had available, and concluded that the driver was Dubas. These observations provided Deputy Heitman with sufficient reasonable suspicion to stop the truck to investigate further.

As Deputy Heitman had reasonable suspicion that the individual driving the truck had a suspended license, the investigatory stop of Dubas did not violate his Fourth Amendment right to be free of unreasonable seizure. The trial court did not err in overruling his motion to suppress evidence.

## CONCLUSION

Having found no merit to Dubas' assignment of error, we affirm the denial of Dubas'
motion to suppress and his conviction.

AFFIRMED.