IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

STATE V. WALTON

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

ROBERT P. WALTON, APPELLANT.

Filed June 16, 2026.    No. A-25-608.

Appeal from the District Court for Lancaster County: MATTHEW O. MELLOR, Judge. Affirmed.

Kristi J. Egger, Lancaster County Public Defender, and Amanda R. Baskin for appellant.

Michael T. Hilgers, Attorney General, and Melissa R. Vincent for appellee.

RIEDMANN, Chief Judge, and BISHOP and FREEMAN, Judges.

FREEMAN, Judge.

### INTRODUCTION

Robert P. Walton appeals his conviction for driving under the influence of alcohol (DUI) entered by the county court for Lancaster County. His conviction was affirmed by the Lancaster County District Court. He argues that the district court erred in affirming the county court's order denying his motion to suppress. For the reasons explained below, we affirm.

### BACKGROUND

Officer Adem Talundzic was on patrol in Lancaster County when he observed a running vehicle with its lights on outside a drinking establishment that he knew was closed. Talundzic made contact with the driver of the vehicle, who was later identified as Walton. After Talundzic detected a strong odor of alcohol emitting from the vehicle, he conducted a preliminary breath test, which Walton failed. Walton was ultimately charged with DUI with one prior conviction.

- 1 -

Walton moved to suppress the evidence seized from him, including visual and auditory observations. Walton alleged that his constitutional rights were violated when the police stopped and arrested him without probable cause. At the hearing on Walton's motion to suppress, the court received body-worn and cruiser footage and Talundzic testified to the following information.

After observing Walton's vehicle, Talundzic approached and parked immediately behind the vehicle but not in a parking spot. There were several open parking spots available in the parking lot, and Walton had nothing obstructing the front of his vehicle. Based on his observations, Talundzic had no reason to believe any other crime or violation was about to be committed except that the vehicle was running outside of a closed drinking establishment. There was no indication that anyone needed help, nor had Talundzic received a call to report to that specific area.

Talundzic testified that he exited his cruiser and approached Walton's vehicle on foot. While walking to Walton's vehicle, Talundzic shined his flashlight into the mirror of the vehicle, which impaired any occupant's vision. As Talundzic drew near, he shined his flashlight inside the vehicle, pointing it directly at Walton. Up to this point, Talundzic did not believe there to be anything wrong with the occupants of Walton's vehicle. Talundzic also testified to his opinion that, at this time, Walton was not free to leave, although he did not express that opinion to Walton.

After Talundzic approached the vehicle, Walton rolled down his window without any direction from Talundzic. Once the window was rolled down, Talundzic detected the odor of alcohol emitting from the vehicle. Upon detecting the odor of alcohol, Talundzic began conducting a DUI investigation. Shortly after Walton rolled down his window, another officer arrived at the scene and stood near the rear of the vehicle.

The county court denied Walton's motion to suppress. The county court found that "Talundzic's questioning of [Walton] was done without interrupting or restraining [Walton's] movement. There was no evidence that Officer Talundzic displayed his weapon, used a forceful tone of voice, touched [Walton] or otherwise told [Walton] that he was not free to leave." Because of these findings, the county court determined that Walton was not seized, and his constitutional rights were not violated.

Walton was sentenced to a term of 90 days' imprisonment, allowed to be served under an order of house arrest, to pay a fine of $1,000, and to have his license suspended and revoked for a period of 3 years with the ability to equip his vehicle with an ignition interlock device.

Walton appealed to the district court, claiming that the county court erred by denying his motion to suppress. The district court affirmed the county court's decision based on similar reasoning.

Walton appeals.

ASSIGNMENT OF ERROR

Walton assigns that the district court erred by affirming the county court's order denying his motion to suppress.

STANDARD OF REVIEW

In an appeal of a criminal case from the county court, the district court acts as an intermediate court of appeals, and its review is limited to an examination of the record for error or abuse of discretion. *State v. Taylor*, 310 Neb. 376, 966 N.W.2d 510 (2021). Both the district court

and a higher appellate court generally review appeals from the county court for error appearing on the record. *Id.* When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id.* But we independently review questions of law in appeals from the county court. *Id.*

When reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. *State v. Weber*, 320 Neb. 934, 31 N.W.3d 229 (2026). Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protections is a question of law that is reviewed independently of the trial court's determination. *Id.*

ANALYSIS

Walton argues that the district court erred by affirming the county court's order denying his motion to suppress. Before addressing his argument, we set out the legal framework for evaluating seizures under the U.S. Constitution.

The Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution guarantee against unreasonable searches and seizures. *State v. Gilliam*, 292 Neb. 770, 874 N.W.2d 48 (2016). Evidence obtained as the fruit of an illegal search or seizure is inadmissible in a state prosecution and must be excluded. *Id.*

To determine whether an encounter between an officer and a citizen reaches the level of a seizure under the Fourth Amendment to the U.S. Constitution, an appellate court employs the analysis set forth in *State v. Van Ackeren*, 242 Neb. 479, 495 N.W.2d 630 (1993). *State v. Gilliam, supra. State v. Van Ackeren, supra*, describes three levels, or tiers, of police-citizen encounters.

The first tier does not implicate the Fourth Amendment. *State v. Gilliam, supra.* A tier-one police-citizen encounter involves the voluntary cooperation of the citizen elicited through noncoercive questioning and does not involve any restraint of liberty of the citizen. *Id.* Because tier-one encounters do not rise to the level of a seizure, they are outside the realm of Fourth Amendment protection. *State v. Gilliam, supra.*

However, second or third tier encounters require constitutional analysis. *Id.* A tier-two police-citizen encounter constitutes an investigatory stop as defined by *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). *State v. Gilliam, supra.* Such an encounter involves a brief, nonintrusive detention during a frisk for weapons or preliminary questioning. *Id.* A tier-three police-citizen encounter constitutes an arrest. *Id.* An arrest involves a highly intrusive or lengthy search or detention. *Id.* Tier-two and tier-three police-citizen encounters are seizures sufficient to invoke the protections of the Fourth Amendment to the U.S. Constitution. *State v. Gilliam, supra.*

A seizure in the Fourth Amendment context occurs only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he or she was not free to leave. *State v. Gilliam, supra.* In addition to situations where an officer directly tells a suspect that he or she is not free to go, circumstances indicative of a seizure may include the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the citizen's person, or the use of language or tone of voice indicating the compliance with the officer's request might be compelled. *Id.* Nebraska appellate courts have concluded that a police officer's

merely questioning an individual in a public place, such as asking for identification, is not a seizure subject to Fourth Amendment protections, so long as the questioning is carried on without interrupting or restraining the person's movement. See *State v. Gilliam, supra.* No level of suspicion of illegal activity is required. See *State v. Lowman*, 308 Neb. 482, 954 N.W.2d 905 (2021).

In *State v. Gilliam, supra*, a police officer questioned the defendant in a public place after parking behind the defendant's vehicle and turning his overhead lights on. The defendant was voluntarily parked in a public place in the early morning hours. See *id.* The police officer approached the defendant's vehicle alone and on foot. See *id.* The police officer knocked on the window and asked to see the defendant's identification. See *id.* There was no evidence that the police officer displayed his weapon, used a forceful tone of voice, touched the defendant, or otherwise told the defendant that he was not free to leave. See *id.* The Nebraska Supreme Court determined that none of these circumstances would have made a reasonable person believe that he or she was not free to leave. See *State v. Gilliam*, 292 Neb. 770, 874 N.W.2d 48 (2016). As such, the court concluded that the police encounter was a tier-one encounter that did not implicate the Fourth Amendment. See *State v. Gilliam, supra.*

Similarly, here, Talundzic questioned Walton in a public place after parking behind Walton's vehicle and turning his flashlight on. Walton argued in his brief that the flashlight was shining into his rear-view mirror, which prevented him from being able to operate his vehicle. Talundzic parked directly behind Walton and not in a parking spot. While these factors may have obstructed Walton from reversing his vehicle, Walton was able to leave the parking lot because the front of his vehicle was unobstructed.

Talundzic originally approached Walton's vehicle alone and on foot. Eventually another police officer arrived on the scene and stood toward the rear of Walton's vehicle. However, the second police officer appeared after Walton had already voluntarily rolled down his window. Therefore, the second police officer's appearance did not threaten Walton to act.

Unlike in *State v. Gilliam, supra*, Talundzic did not knock on Walton's window or otherwise direct or speak to Walton to roll down his window. Talundzic shined his flashlight in the vehicle to see inside, and Walton voluntarily rolled down his window.

And similarly to *Gilliam*, there was no evidence that Talundzic displayed his weapon, used a forceful tone of voice, touched Walton or otherwise told Walton that he was not free to leave. Although Talundzic testified that he personally did not believe Walton was free to leave, based on our de novo review, none of the circumstances of this case would have made a reasonable person believe that Walton was not free to leave. And Talundzic's subjective intent is irrelevant for determining whether a seizure did in fact occur. See *State v. Rivera*, 297 Neb. 709, 901 N.W.2d 272 (2017).

Therefore, Talundzic's encounter with Walton was a tier-one encounter that did not implicate the Fourth Amendment. Walton does not challenge the county court's determination that Talundzic had probable cause to arrest Walton when Talundzic detected the odor of alcohol after the vehicle's window was rolled down. Therefore, we conclude that the district court did not err by affirming the county court's order denying Walton's motion to suppress.

CONCLUSION

We conclude that the district court did not err by affirming the county court's order denying Walton's motion to suppress because the police encounter with Walton was a tier-one encounter that did not implicate the Fourth Amendment.

AFFIRMED.