Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
12/13/2019 09:06 AM CST

State of Nebraska, appellee, v.
Shalynn R. Hartzell, appellant.
___ N.W.2d ___

Filed September 20, 2019.    No. S-18-1105.

1. **Judgments: Jurisdiction: Appeal and Error.** A jurisdictional question that does not involve a factual dispute is determined by an appellate court as a matter of law, which requires the appellate court to reach a conclusion independent of the lower court's decision.

2. **Constitutional Law: Search and Seizure: Motions to Suppress: Appeal and Error.** In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protection is a question of law that an appellate court reviews independently of the trial court's determination.

3. **Motions to Suppress: Trial: Pretrial Procedure: Appeal and Error.** When a motion to suppress is denied pretrial and again during trial on renewed objection, an appellate court considers all the evidence, both from trial and from the hearings on the motion to suppress.

4. **Jurisdiction: Appeal and Error.** It is the duty of an appellate court to determine whether it has jurisdiction over the matter before it, irrespective of whether the issue is raised by the parties.

5. **Sentences: Probation and Parole.** The practice of entering separate sentencing and probation orders is disapproved. Instead, a sentencing court should enter its entire judgment, including all of the terms and conditions of probation, at one time.

6. **Appeal and Error.** An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court.

7. **Constitutional Law: Search and Seizure.** Both the Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution guarantee against unreasonable searches and seizures.

8. **Search and Seizure: Evidence: Trial.** Evidence obtained as the fruit of an illegal search or seizure is inadmissible in a state prosecution and must be excluded.

9. **Constitutional Law: Police Officers and Sheriffs: Search and Seizure: Appeal and Error.** To determine whether an encounter between an officer and a citizen reaches the level of a seizure under the Fourth Amendment to the U.S. Constitution, an appellate court employs the analysis set forth in *State v. Van Ackeren*, 242 Neb. 479, 495 N.W.2d 630 (1993), which describes the three levels, or tiers, of police-citizen encounters.

10. **Constitutional Law: Police Officers and Sheriffs: Search and Seizure: Arrests.** A tier-one police-citizen encounter involves the voluntary cooperation of the citizen elicited through noncoercive questioning and does not involve any restraint of liberty of the citizen. Because tier-one encounters do not rise to the level of a seizure, they are outside the realm of Fourth Amendment protection. A tier-two police-citizen encounter involves a brief, nonintrusive detention during a frisk for weapons or preliminary questioning. A tier-three police-citizen encounter constitutes an arrest, which involves a highly intrusive or lengthy search or detention. Tier-two and tier-three police-citizen encounters are seizures sufficient to invoke the protections of the Fourth Amendment to the U.S. Constitution.

11. **Constitutional Law: Search and Seizure.** A seizure in the Fourth Amendment context occurs only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he or she was not free to leave.

12. ____: ____. In addition to situations where an officer directly tells a suspect that he or she is not free to go, circumstances indicative of a seizure may include the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the citizen's person, or the use of language or tone of voice indicating the compliance with the officer's request might be compelled.

13. **Police Officers and Sheriffs: Search and Seizure.** A seizure does not occur simply because a law enforcement officer approaches an individual and asks a few questions or requests permission to search an area, provided the officer does not indicate that compliance with his or her request is required.

Appeal from the District Court for Adams County: Terri S. Harder and Stephen R. Illingworth, Judges. Affirmed.

John Heieck and Kelsey Helget, Assistant Adams County Public Defenders, for appellant.

Douglas J. Peterson, Attorney General, and Jordan Osborne for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Cassel, J.

## I. INTRODUCTION

In Shalynn R. Hartzell's appeal from her conviction and probationary sentence for possession of a controlled substance, the legality of the evidence turns upon whether the traffic stop concluded and a voluntary police-citizen encounter began before she consented to a search of her vehicle. Because the totality of circumstances here establishes that this was not, as Hartzell contends, an unlawful extended seizure, her appeal fails. Before reaching that conclusion, we note jurisdiction but disapprove of the practice of entering separate sentencing and probation orders, and we direct that a sentencing court should instead enter its entire judgment, including all of the terms and conditions of probation, at one time.

## II. BACKGROUND

### 1. Encounters

Because the crux of Hartzell's argument is based upon police-citizen encounters, we recount those events first. At oral argument, Hartzell conceded that she does not dispute the historical facts determined by the district court. Therefore, we recount the facts accordingly.

In March 2017, Sgt. Raelee VanWinkle of the Hastings, Nebraska, police department conducted a traffic stop of Hartzell's vehicle for expired registration tags. Hartzell was alone in the vehicle. VanWinkle issued a "fix-it" ticket, returned Hartzell's license and registration, and told Hartzell to "'have a good night and to drive careful[ly].'" VanWinkle began to walk back to her patrol vehicle.

After reaching the rear of Hartzell's vehicle, VanWinkle turned around and again approached Hartzell. VanWinkle asked, "'[H]ey, before you go, do you have a minute to talk to

me?'" Hartzell responded, "'[S]ure, what's up?'" VanWinkle asked to search the vehicle and Hartzell "verbally indicated that she didn't have a problem with that."

After a search of Hartzell's vehicle, VanWinkle found a marijuana joint, marijuana stems and leaves, a digital gram scale with a white crystalline substance on it, and a methamphetamine pipe. When confronted about these items, Hartzell stated that she was a marijuana user and used the scale to weigh her marijuana. A field test of the pipe residue resulted in a presumptive positive for methamphetamine. VanWinkle arrested Hartzell and searched her person. VanWinkle found "a baggie of methamphetamine in [Hartzell's] bra." Later, the Nebraska State Patrol Crime Laboratory tested the "baggie" and confirmed it contained methamphetamine with a weight of .94 grams.

While being taken to jail, Hartzell stated that she had tried to "stay clean" and that she had relapsed the prior night. VanWinkle denied conducting an interview in the patrol vehicle.

Once at the jail and after Hartzell waived her *Miranda* rights, VanWinkle interviewed her. Hartzell admitted that she had relapsed and that she came to Hastings to purchase methamphetamine.

Prior to a stipulated bench trial, Hartzell moved to suppress all evidence found during the search of her vehicle or on her person and all statements made to law enforcement. The district court denied the motion and determined that neither the Fourth Amendment nor the Fifth Amendment had been violated. Because Hartzell's argument on appeal relies solely on the Fourth Amendment, in that she claims the seizure of the traffic stop was continuous until her ultimate arrest, we summarize only those findings pertinent to the Fourth Amendment analysis.

Regarding Hartzell's Fourth Amendment claim, the court determined that "a reasonable person would not conclude [she was] not free to leave," because VanWinkle told her to "'drive safe[ly]'" and did not indicate that her compliance

with the request to search was required. It noted that although VanWinkle's patrol vehicle's lights were still activated, Hartzell knew that VanWinkle had not returned to the patrol vehicle. It determined that VanWinkle did not display a weapon, touch Hartzell, or use an authoritative tone. It concluded that Hartzell was not seized and that VanWinkle did not need reasonable, articulable suspicion to reapproach Hartzell and request consent to search. Hartzell later moved to reconsider and vacate the order on the motion to suppress. She contended that the court entered the order on the day that the court had scheduled the parties to submit their reply briefs. The court then reviewed the reply briefs and declined to vacate the motion to suppress order.

At trial, Hartzell renewed her motion to suppress. The district court adhered to its prior ruling. The district court found Hartzell guilty of possession of a controlled substance, methamphetamine, pursuant to Neb. Rev. Stat. § 28-416(3) (Reissue 2016).

## 2. October Sentencing Order

At a sentencing hearing, the district court sentenced Hartzell to 2 years of probation and pronounced several conditions for probation. A few days after the hearing, on October 29, 2018, the court entered a sentencing order, styled as a journal entry (October sentencing order), which also stated that Hartzell "should be ordered to comply with the terms and conditions set out in the separate Order of Probation."

Within 30 days of the entry of the October sentencing order, Hartzell filed her notice of appeal. We moved the appeal to our docket.[1]

## 3. Inquiry Regarding Jurisdiction

After reviewing the transcript, this court noted that no "separate Order of Probation" appeared in our record. After we notified the parties of this situation, Hartzell supplemented

_____

[1] See Neb. Rev. Stat. § 24-1106(3) (Cum. Supp. 2018).

the record with an order of probation entered on July 17, 2019 (July order of probation). This order was entered after our notification to the parties.

We then ordered the parties to submit simultaneous supplemental briefing on jurisdiction. The parties did so prior to oral argument.

## III. ASSIGNMENTS OF ERROR

Hartzell assigns, consolidated and restated, that the district court erred in denying her motion to suppress, motion to reconsider and vacate, and renewed motion to suppress.

## IV. STANDARD OF REVIEW

[1] A jurisdictional question that does not involve a factual dispute is determined by an appellate court as a matter of law, which requires the appellate court to reach a conclusion independent of the lower court's decision.[2]

[2,3] In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protection is a question of law that an appellate court reviews independently of the trial court's determination.[3] When a motion to suppress is denied pretrial and again during trial on renewed objection, an appellate court considers all the evidence, both from trial and from the hearings on the motion to suppress.[4]

## V. ANALYSIS

### 1. Jurisdiction

[4] Before reaching Hartzell's assignments of error, we must determine whether this court has jurisdiction. It is the

---

[2] *State v. Thalmann*, 302 Neb. 110, 921 N.W.2d 816 (2019).

[3] *State v. Petsch*, 300 Neb. 401, 914 N.W.2d 448 (2018).

[4] *State v. Rivera*, 297 Neb. 709, 901 N.W.2d 272 (2017).

duty of an appellate court to determine whether it has jurisdiction over the matter before it, irrespective of whether the issue is raised by the parties.[5] Obviously, the question arose because the October sentencing order contemplated a "separate Order of Probation" that was not entered until nearly 8 months after the notice of appeal. However, this appeal does not challenge the content of either the October sentencing order or the July order of probation. Thus, no claim is made that either order conflicted with the pronouncement of sentence. Here, we need only determine whether we have jurisdiction of this appeal, and our statutes provide a clear jurisdictional basis.

Under Neb. Rev. Stat. § 25-1912 (Cum. Supp. 2018), which includes appeals from "judgments and sentences upon convictions for felonies and misdemeanors"[6] and which must be read together with other statutes governing appeals in criminal cases,[7] a notice of appeal filed after the announcement of a decision or final order but before the entry of the judgment, decree, or final order shall be treated as filed after the entry of the judgment, decree, or final order and on the date of entry.[8] "In other words, to trigger the savings clause for premature notices of appeal under § 25-1912(2), an announcement must pertain to a decision or order that, once entered, would be final and appealable."[9]

Here, the oral announcement of a sentence and the content of the October sentencing order, which stated a "separate Order of Probation" would be forthcoming, triggered the savings clause under § 25-1912(2). Although the notice of appeal was filed almost 8 months before the remainder of the judgment

---

[5] See *Thalmann, supra* note 2.

[6] § 25-1912(1).

[7] See Neb. Rev. Stat. §§ 29-2301 and 29-2306 (Reissue 2016).

[8] See § 25-1912(2).

[9] *Lindsay Internat. Sales & Serv. v. Wegener*, 297 Neb. 788, 795, 901 N.W.2d 278, 282 (2017).

was entered, it was filed after the announcement of the October sentencing order, which in turn announced the July order of probation. Taken together, the October sentencing order, which was initially interlocutory, and the July order of probation composed a complete sentencing judgment, from which Hartzell could appeal. Because her notice of appeal was filed after the announcement but before the entry of the judgment, her premature notice of appeal sprang into effect after the entry of the July order of probation.

[5] But we emphasize that this jurisdictional tangle could and should have been avoided. The practice of entering separate sentencing and probation orders is disapproved. Instead, a sentencing court should enter its entire judgment, including all of the terms and conditions of probation, at one time. And we remind trial courts that when imposing a sentence, the court should state with care the precise terms of the sentence which is imposed. This same rule applies to the terms of probation imposed upon a defendant.[10]

## 2. MOTION TO SUPPRESS

### (a) Seizure

Hartzell argues that the district court erred when it failed to grant her motion to suppress evidence found during a search of her vehicle and person, as well as statements she made to law enforcement. She asserts that because the encounter with VanWinkle never de-escalated to a voluntary encounter, VanWinkle "unlawfully expanded the scope and extended the duration of the investigative stop . . . and thus obtained evidence and statements from [Hartzell] in violation of the Fourth Amendment."[11] The State argues that the traffic stop terminated when VanWinkle told Hartzell, in effect, she was free to leave and that what followed was a separate encounter not subject to the Fourth Amendment. We agree with the State.

---

[10] See *State v. Salyers*, 239 Neb. 1002, 480 N.W.2d 173 (1992).

[11] Brief for appellant at 20.

[6] Hartzell's argument depends solely on the Fourth Amendment analysis. She does not argue that her consent was not voluntary or that her statements were procured in violation of her *Miranda* rights and the Fifth Amendment. An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court.[12]

[7,8] Both the Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution guarantee against unreasonable searches and seizures.[13] Evidence obtained as the fruit of an illegal search or seizure is inadmissible in a state prosecution and must be excluded.[14]

[9,10] To determine whether an encounter between an officer and a citizen reaches the level of a seizure under the Fourth Amendment to the U.S. Constitution, an appellate court employs the analysis set forth in *State v. Van Ackeren*,[15] which describes the three levels, or tiers, of police-citizen encounters.[16] A tier-one police-citizen encounter involves the voluntary cooperation of the citizen elicited through noncoercive questioning and does not involve any restraint of liberty of the citizen. Because tier-one encounters do not rise to the level of a seizure, they are outside the realm of Fourth Amendment protection. A tier-two police-citizen encounter involves a brief, nonintrusive detention during a frisk for weapons or preliminary questioning. A tier-three police-citizen encounter constitutes an arrest, which involves a highly intrusive or lengthy search or detention. Tier-two and tier-three police-citizen encounters are seizures sufficient to invoke the protections of the Fourth Amendment to the U.S. Constitution.[17]

---

[12] *State v. Jenkins*, 303 Neb. 676, 931 N.W.2d 851 (2019).

[13] *State v. Garcia*, 302 Neb. 406, 923 N.W.2d 725 (2019).

[14] *State v. Gilliam*, 292 Neb. 770, 874 N.W.2d 48 (2016).

[15] *State v. Van Ackeren*, 242 Neb. 479, 495 N.W.2d 630 (1993).

[16] *Gilliam, supra* note 14.

[17] *Petsch, supra* note 3.

[11-13] A seizure in the Fourth Amendment context occurs only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he or she was not free to leave.[18] In addition to situations where an officer directly tells a suspect that he or she is not free to go, circumstances indicative of a seizure may include the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the citizen's person, or the use of language or tone of voice indicating the compliance with the officer's request might be compelled.[19] A seizure does not occur simply because a law enforcement officer approaches an individual and asks a few questions or requests permission to search an area, provided the officer does not indicate that compliance with his or her request is required.[20]

We begin by noting that neither party has challenged the original traffic stop. The traffic stop resulted in a tier-two seizure sufficient to invoke the protections of the Fourth Amendment.[21] What we must determine is whether the initial traffic stop terminated and de-escalated to a voluntary encounter.

Hartzell relies upon *State v. Hansen*[22] for a similar factual scenario. The officer conducted a traffic stop of the defendant's vehicle for an improper lane change and uninsured vehicle. When the officer returned to the defendant, a second officer arrived and activated his patrol vehicle's lights. The officer gave the defendant a verbal warning for being uninsured but did not give a warning about the improper lane change. Once the officer returned the defendant's documents, he asked whether there was any contraband in the vehicle. The defendant denied. The officer then asked for consent to search the vehicle, and the defendant consented.

---

[18] *State v. Schriner*, 303 Neb. 476, 929 N.W.2d 514 (2019).

[19] *Id.*

[20] *State v. Hedgcock*, 277 Neb. 805, 765 N.W.2d 469 (2009).

[21] See *State v. Barbeau*, 301 Neb. 293, 917 N.W.2d 913 (2018).

[22] *State v. Hansen*, 63 P.3d 650 (Utah 2002).

In *Hansen*, the Utah Supreme Court reasoned that there was no evidence of de-escalation. It considered the factors concerning whether a seizure has occurred. It discussed that because there were no factors demonstrating a coercive show of authority in the initial stop, "a reasonable person would not be able to discern that a seizure had de-escalated to a consensual encounter due to the absence of such factors at the time of additional questioning."[23] It reasoned that when the second officer arrived with his vehicle's lights flashing, a reasonable person may believe that the encounter was escalating rather than de-escalating. It discussed that when the officer returned the defendant's documents and questioned him about contraband, the officer did not address the improper lane change, tell him he did not have to answer, or tell him he was free to leave. Under the totality of the circumstances, the court concluded that the detention did not de-escalate and that therefore, the officer exceeded the scope of the stop without reasonable suspicion.

Here, the facts differ significantly. Based upon the record before us, VanWinkle completed the traffic stop. VanWinkle returned Hartzell's documents and told her to "'have a good night and to drive careful[ly].'" She then walked away from the encounter. After this exchange, a reasonable person would believe that he or she was free to leave. This was a definitive end to the seizure.

At oral argument, Hartzell argued that a reasonable person would not feel free to leave until the officer was inside his or her vehicle for fear of injuring the officer. We disagree. Although roadside safety is a paramount concern for officers and citizens, there is no per se rule extending the length of a traffic stop in this way. Based upon the totality of the circumstances, we conclude that VanWinkle terminated the first encounter before beginning a new one.

---

[23] *Id*. at 662.

We must also determine whether the second encounter was a seizure. For three reasons, we conclude that it was only a tier-one encounter.

First, VanWinkle did not show coercive authority. Upon reapproaching Hartzell, VanWinkle did not use an authoritative tone, brandish her weapon, or touch Hartzell. Although these factors were not present in the initial encounter, the second encounter did not begin under the guise of the initial encounter. The termination of the prior encounter signaled the start of a new encounter. Additionally, until Hartzell gave consent to search, there was only one officer present. There was no evidence of coercive authority to escalate the voluntary encounter to a seizure.

Second, VanWinkle did not require compliance with her request. VanWinkle asked, "'[H]ey, before you go, do you have a minute to talk to me?'" The question was casual, not authoritative. The question did not demand compliance[24]; it simply asked for a willingness to consent.

Third, the continued flashing of the patrol vehicle's lights does not dictate a different outcome. Hartzell emphasizes that the lights were not extinguished at the point when VanWinkle began to return to her patrol vehicle. But Hartzell was aware that the patrol vehicle's lights were activated for the initial encounter, and "[Hartzell] knew [VanWinkle] had not been back to her unit to turn [the patrol vehicle's lights] off." VanWinkle's requests contradicted the notion that the flashing lights continued to command Hartzell's presence. And as we reasoned in *State v. Gilliam*,[25] patrol vehicle lights alone would not cause a reasonable person to believe that he or she was not free to leave.

Under the totality of the circumstances, the factors regarding the second encounter do not support that a seizure

---

[24] See *Hedgcock, supra* note 20.

[25] See *Gilliam, supra* note 14.

occurred. The evidence failed to show how VanWinkle applied coercive authority or required compliance with her requests. Accordingly, VanWinkle did not seize Hartzell. We conclude that the district court did not err in overruling Hartzell's motion to suppress.

Hartzell further argues that even if the encounter de-escalated, "[her] purported consent to search her vehicle was the product of police exploitation of a prior illegality,"[26] a concept known as the attenuation doctrine. If the consent to search was not sufficiently attenuated, it is invalid as an exploitation of the prior illegal act and a court must exclude both the consent and the evidence found as a result of that consent as fruit of the poisonous tree.[27] Because we determined that VanWinkle did not violate the Fourth Amendment when asking for consent to search, attenuation is inapplicable. This argument lacks merit.

### (b) Remaining Arguments

Hartzell's remaining arguments address the district court's denials of her motion to reconsider and vacate and her renewed motion to suppress. Hartzell asserts that because the district court rendered a decision on her motion to suppress before the court received the parties' reply briefs, it was error. Hartzell does not cite to any authority to support her assertion.

Based upon the record, the court did recognize that it had entered the order before the parties' scheduled reply brief date. In its order on the motion to reconsider and vacate, it stated that "[it] ha[d] reviewed the reply briefs submitted by both the State and [Hartzell] and decline[d] to vacate its earlier ORDER." We find no prejudicial error.

Because we have considered the evidence from all the hearings and trial and found that the district court did not err in overruling the motion to suppress, it necessarily follows that

---

[26] Brief for appellant at 33.

[27] See *State v. Gorup*, 279 Neb. 841, 782 N.W.2d 16 (2010).

the court did not err in overruling the motion to reconsider and vacate and the renewed motion to suppress.

## VI. CONCLUSION

We determine that we have jurisdiction pursuant to § 25-1912(2). Additionally, because there was no seizure during the second encounter, we conclude that the district court did not err by overruling Hartzell's motion to suppress, motion to reconsider and vacate, and renewed motion to suppress. Thus, we affirm her conviction and sentence.

AFFIRMED.