# United States Court of Appeals

## For the Eighth Circuit

_____

No. 16-1898

_____

A.W., a minor child, by and through John Doe, as Next Friend and Guardian, and
Jane Doe, as Next Friend and Guardian; John Doe, as Next Friend and Guardian of
A.W., a minor child; Jane Doe, as Next Friend and Guardian of A.W., a minor child

*Plaintiffs - Appellees*

v.

State of Nebraska; Nebraska State Patrol; Jon Bruning, Attorney General of
Nebraska; David Sankey, Col., Superintendent of Law Enforcement and Public
Safety for Nebraska State Patrol

*Defendant*s

Paul Wood, County Attorney for Red Willow County; Gene Mahon, Sheriff Red
Willow County; Doug Peterson, in his official capacity

*Defendants - Appellants*

Thomas Schwarten, in his official capacity

*Defendant*

Colonel Bradley Rice, in his official capacity

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: May 10, 2017
Filed: July 31, 2017

_____

Before RILEY, BEAM, and SHEPHERD, Circuit Judges.

_____

BEAM, Circuit Judge.

The State of Nebraska, along with the Nebraska State Patrol (NSP) and various state officials (collectively, the State), appeals the district court's[1] grant of summary judgment to A.W. and A.W.'s guardians, John and Jane Doe, enjoining it from applying to A.W. a provision of Nebraska's Sex Offender Registration Act (SORA). That provision, Neb. Rev. Stat. § 29-4003(1)(a)(iv), applies SORA to any person who, on or after January 1, 1997, "[e]nters the state and is required to register as a sex offender under the laws of another village, town, city, state, territory, commonwealth, or other jurisdiction of the United States." We hold that this provision does not apply to appellant A.W. and, accordingly, affirm the district court.

## I.    BACKGROUND

We recite the facts as set forth in the parties' stipulated record. In October, 2013, a petition was filed in the Anoka County, Minnesota, juvenile court alleging that in July and August of 2013, A.W., at that time eleven years old, engaged in conduct constituting first-degree criminal sexual conduct under the laws of that state. See Minn. Stat. § 609.342. Around August 2013, A.W. began residing with John and Jane Doe in Nebraska. In July 2014, A.W. was adjudicated delinquent for the alleged conduct at a hearing in the Anoka County juvenile court, and the court ordered A.W.

_____

[1]The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska.

to comply with Minnesota's predatory-offender-registration statute. A.W. traveled to Minnesota for the hearing and afterward returned to Nebraska. Later that month, A.W. applied for and was granted a transfer in supervision from Minnesota to Nebraska under the Interstate Compact for Juveniles. In August 2014, the Nebraska probation office notified A.W. and John and Jane Doe that A.W. must either register on Nebraska's sex-offender registry or face criminal referral to the county sheriff and attorney.

Although A.W. was required to register as a predatory offender in Minnesota, Minn. Stat. § 243.166 subd. 1b(a)(1), a person required to register due solely to a delinquency adjudication is not included in the definition of a predatory offender for Minnesota's statute covering the public disclosure of the identity and re-offense risk of such registrants, id. § 244.052 subd. 1(5). As a consequence, neither the fact of A.W.'s registration nor information that he would be required to provide to law enforcement officials in connection with his registration, id. § 243.166 subd. 7, would be made public. By contrast, SORA provides that, with some exceptions, "[i]nformation obtained under [SORA] shall not be confidential." Neb. Rev. Stat. § 29-4009(1). Further, the Nebraska State Patrol (NSP)–the agency tasked by SORA with adopting and promulgating rules and regulations to carry out SORA's registration provisions and for the release of information under § 29-4009, id. § 29-4013–subjects every registrant to public identification, including the registrant's identity and other relevant information, on its sex-offender-registry website. See id. § 29-4013(2)(b) (requiring use of "electronic systems" in releasing information for purpose of public notification). Therefore, A.W.'s registration and related information would be made public in Nebraska under SORA. Although the NSP required A.W., as a juvenile entrant adjudicated delinquent and subject to predatory-offender registration in Minnesota, to register under SORA, it does not require juveniles adjudicated delinquent in Nebraska to do so. See 272 Neb. Admin. Code ch. 19 § 003.05C ("The registration requirement does not apply to a person

-3-

who: . . . . Is a juvenile adjudicated 'delinquent' or 'in need of special supervision' by the juvenile courts in the state of Nebraska[.]").

A.W. and John and Jane Doe filed this 42 U.S.C. § 1983 action against the State, alleging that the Nebraska legislature did not intend SORA to apply to juveniles and that both the application of SORA to A.W. generally, and its public notification provisions specifically, violate various guarantees under the United States and Nebraska Constitutions. The district court granted the plaintiffs' motion for summary judgment and denied defendants'. It concluded that the plain meaning of "sex offender" as employed in § 29-4003(1)(a)(iv) unambiguously means one who was convicted of a sex crime, which would not include a juvenile adjudicated delinquent. Accordingly, it permanently enjoined Nebraska from applying SORA to A.W. The State appeals.

## II. DISCUSSION

The issue for review is whether the district court correctly interpreted § 29-4003(1)(a)(iv) of SORA as inapplicable to A.W. We review de novo both the district court's grant of summary judgment and its interpretation of state law. Food Mkt. Merch., Inc. v. Scottsdale Indem. Co., 857 F.3d 783, 786 (8th Cir. 2017). Because the Nebraska courts have not directly spoken to the question before us, an interpretation of a Nebraska statute, "our objective is to predict how [Nebraska]'s highest state court would interpret the statute." John T. v. Marion Indep. Sch. Dist., 173 F.3d 684, 687 (8th Cir. 1999).

> Statutory language is to be given its plain and ordinary meaning, and [the Nebraska Supreme Court] will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. It is not within the province of [that] court to read a meaning into a statute that is not warranted by the legislative language.

-4-

State v. Gilliam, 874 N.W.2d 48, 56-57 (Neb.) (footnote omitted), cert. denied, 137 S. Ct. 371 (2016). Accordingly, "[i]n discerning the meaning of a statute, a court determines and gives effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense." Farmers Coop. v. State, 893 N.W.2d 728, 735 (Neb.), reh'g denied and modified, Nos. S-16-312, S-16-313, 2017 WL 2883660 (July 7, 2017). If, however, "the language used cannot be adequately understood from the plain meaning of the statute or when considered in pari materia with any related statutes," it is ambiguous. Id. at 735. Put differently, "[a] statute is ambiguous if it is susceptible of more than one reasonable interpretation." State v. Frederick, 864 N.W.2d 681, 686 (Neb. 2015). If a statute is found to be ambiguous, Nebraska courts may examine its legislative history and engage in judicial interpretation, Farmers Coop., 893 N.W.2d at 737; at this point a statute becomes "open for construction to determine its meaning." City of Omaha v. Kum & Go, LLC, 642 N.W.2d 154, 161 (Neb. 2002).

Section 29-4003(1) sets out the classes of persons to whom SORA applies, including those who have been found guilty of, or pled guilty or no contest to, enumerated Nebraska sex crimes, Nebraska nonsex crimes involving sexual conduct, or substantially equivalent crimes in other jurisdictions. In addition, "[SORA] applies to any person who on or after January 1, 1997: . . . Enters the state and is required to register as a sex offender under the laws of another village, town, city, state, territory, commonwealth, or other jurisdiction of the United States." Neb. Rev. Stat. § 29-4003(1)(a)(iv). The State asserts that A.W. falls within § 29-4003(1)(a)(iv) because A.W. entered Nebraska while required to register on Minnesota's predatory-offender registry. The parties do not dispute these facts; the only disputed issue is the legal question of whether A.W., as a juvenile adjudicated delinquent for a sex crime, was required to register in Minnesota "as a sex offender."

The State argues, rather perfunctorily, that the language plainly and unambiguously supports its view that A.W. falls within § 29-4003(1)(a)(iv). Its

position appears to be that the phrase "under the laws of another . . . state" qualifies "register as a sex offender" so as to incorporate into the provision the meaning given the term "sex offender" by the jurisdiction in which the entrant was adjudicated. That is, in A.W.'s case, "sex offender" means whatever it means in Minnesota. The State reasons that A.W. was required to register in Minnesota as what that state considers to be a sex offender, ergo A.W. must register in Nebraska. Appellees reassert the district court's conclusions, arguing that the plain meaning of "sex offender" is one convicted of a sex crime. Adjudication of delinquency, Appellees assert, is not a conviction and therefore falls outside the ordinary understanding of "sex offender."

Two initial points. First, under both Minnesota and Nebraska law an adjudication of delinquency is not a criminal proceeding, nor does it result in a conviction. See Minn. Stat. § 260B.245 subd. 1(a) ("No adjudication upon the status of any child in the jurisdiction of the juvenile court shall operate to impose any of the civil disabilities imposed by conviction, nor shall any child be deemed a criminal by reason of this adjudication, nor shall this adjudication be deemed a conviction of crime," with exceptions not here applicable); Neb. Rev. Stat. § 43-280 ("No adjudication by the juvenile court upon the status of a juvenile shall be deemed a conviction nor shall the adjudication operate to impose any of the civil disabilities ordinarily resulting from conviction."); see also In re Welfare of J.J.P., 831 N.W.2d 260, 269 (Minn. 2013) ("An adjudication of delinquency, however, does not result in a criminal conviction or a criminal record. The Legislature treats an adjudication of delinquency as distinct from a criminal conviction."); State v. Brandy M. (In re Interest of Brandy M.), 550 N.W.2d 17, 25 (Neb. 1996) ("We have long recognized that a juvenile court proceeding is not a prosecution for crime, but a special proceeding that serves as an ameliorative alternative to a criminal prosecution."). Although neither Minnesota nor Nebraska provides a generally applicable statutory definition of an adjudication of delinquency, it is ordinarily understood to be a judicial finding that a juvenile has engaged in conduct that *would* be a violation of a criminal law *if* the juvenile were an adult. See Minn. Stat. § 260.515 (codifying

article II.H(2) of the Interstate Compact for Juveniles, which defines "adjudicated delinquent" as "a person found to have committed an offense that, if committed by an adult, would be a criminal offense"); Neb. Rev. Stat. § 43-1011 (same); *Juvenile Delinquency*, Black's Law Dictionary (10th ed. 2014) ("Serious antisocial behavior by a minor, such as vandalism, theft, or joyriding; esp., behavior that would be criminally punishable if the actor were an adult, but instead is usu[ally] punished by special laws applying only to minors.").

Second, following Nebraska Supreme Court precedent as a guide in predicting how that court would interpret the language at issue, we reject at the outset the State's position that "under the laws of another . . . state" incorporates into § 29-4003(1)(a)(iv) Minnesota's definition of "sex offender." In Gilliam, decided just last year, the Nebraska Supreme Court was faced with a similar issue of statutory interpretation:  the meaning of the word "conviction" in the phrase "Any conviction under a law of another state." 874 N.W.2d at 56 (citing Neb. Rev. Stat. § 60-6,197.02(1)(a)(i)(C)). The case involved a defendant with a prior conviction in Missouri, who argued that the prior conviction was not, in fact, a "conviction" under Missouri law. Id. Notwithstanding the "under a law of another state" language, the Court assessed the plain and ordinary meaning of "conviction" by consulting dictionaries and *Nebraska* case law. Id. at 57. The Court observed, "The plain terms of the statute do not require an analysis of Missouri law." Id. at 58. Because of the similarity of the language at issue in Gilliam and in the instant case, we conclude that the plain and ordinary meaning of "sex offender" is to be ascertained with respect to Nebraska law.

Turning to the central issue:  "Sex offender" is nowhere defined in [SORA]. The Nebraska Supreme Court "often turn[s] to dictionaries to ascertain a word's plain and ordinary meaning." Id. at 57. Black's Law Dictionary defines "offense" as "A violation of the law; a crime, often a minor one . . . . Also termed *criminal offense*." It defines "sexual offense" as "An offense involving unlawful sexual conduct . . . ."

*Offense*, Black's Law Dictionary; *Sexual Offense*, id. A "violation of" a criminal law implies a conviction. See *Conviction*, id. ("The act or process of judicially finding someone guilty of a crime; the state of having been proved guilty."); *Guilt*, id. ("The fact, state, or condition of having committed a wrong, esp. a crime . . . ."). Lay dictionaries conform to this reading. See, e.g., Sex Offender, The American Heritage dictionary of the English Language, https://ahdictionary.com/word/search.html?q=sex+offender (last visited July 5, 2017) ("A person who has committed a criminal sexual offense."); Sex Offender, Dictionary.com, http://www.dictionary.com/browse/sex-offender?s=t (last visited July 5, 2017) ("[A] person who has been found guilty of one or more sex crimes."); Sex Offender, Merriam-Webster, https://www.merriam-webster.com/dictionary/sex%20offender (last visited July 5, 2017) ("a person who has been convicted of a crime involving sex"); Sex Offender, under *Compounds C3.*, Sex, Oxford English Dictionary, http://www.oed.com/view/Entry/176989?redirectedFrom=sex+offender#eid23487277 (last visited July 5, 2017) ("[A] person who commits an illicit action or (now esp.) a criminal offence involving sex."). These sources provide good evidence that a "sex offender" is ordinarily understood as a person who has been convicted of a crime involving unlawful sexual conduct.

This conclusion is underscored by reading the legislative findings set forth in SORA: "The Legislature further finds that efforts of law enforcement agencies to protect their communities, conduct investigations, and quickly apprehend *sex offenders* are impaired by the lack of available information about *individuals who have pleaded guilty to or have been found guilty of sex offenses* and who live, work, or attend school in their jurisdiction." Neb. Rev. Stat. § 29-4002 (emphasis added). This language has been quoted by the Nebraska Supreme Court in characterizing sex offenders under SORA. See State v. Norman, 808 N.W.2d 48, 61-62 (Neb. 2012) ("The [NSP] Sex Offender Registry, following the language of § 29-4002, 'stigmatizes' the people listed on it insofar as it asserts that the persons listed are sex

offenders, *that is*, 'individuals who have pleaded guilty to or have been found guilty of sex offenses.'" (emphasis added) (quoting Nebraska Sex Offender Registry, https://sor.nebraska.gov/ (last visited June 30, 2017)).  Consistent with the ordinary understanding of "guilt" as the fact, state, or condition of having committed a criminal violation, our review of Nebraska caselaw does not reveal that term having ever been used with respect to admissions or adjudications in juvenile proceedings, which, as explained above, are noncriminal.

It is true, it should be noted, that juvenile delinquents are sometimes referred to in the lexicon of criminal proceedings.  The Ninth Edition of Black's Law Dictionary, published in 2009 not long after the language in § 29-4003(1)(a)(iv) was added to SORA in 2006, L.B. 1199, 99th Leg., 2d Sess. § 18 (Neb. 2006) (enacted), defines a "juvenile delinquent" as "[a] minor who is guilty of criminal behavior."[2] And the term "offender" is sometimes used in conjunction with juvenile adjudications.  See *Status Offender*, Black's Law Dictionary ("A youth who engages in conduct that–though not criminal by adult standards–is considered inappropriate enough to bring a charge against the youth in juvenile court; a juvenile who commits a status offense."); *Juvenile Offender*, id. ("See JUVENILE DELINQUENT.").  Nebraska Supreme Court cases have referred to juveniles in juvenile proceedings as "juvenile offenders," e.g., State v. Schreiner, 754 N.W.2d 742, 756 (Neb. 2008) (citing Davis v. Alaska, 415 U.S. 308 (1974); State v. Leo L. II (*In re* Interest of Leo L. II), 606 N.W.2d 783, 785 (Neb. 2000); State v. A.M.H. (*In re* Interest of A.M.H.), 447 N.W.2d 40, 43-44 (Neb. 1989), and the Nebraska Juvenile Code creates classes of juvenile offenders Nebraska courts refer to as "status offenders" and "law violators,"

---

[2]This definition was altered, however, in the 10th edition of Black's Law Dictionary, published five years later, which defines "juvenile delinquent" as "[a] minor, often 7–15 years of age, who has committed an act that, if the minor had been an adult, would constitute a crime."  This seems to us to be a clarification of the meaning of that term, rather than an indication that its ordinary understanding has significantly evolved from 2009 to 2014.

State v. Katrina R. (*In re* Katrina R.), 799 N.W.2d 673, 676 (Neb. 2011).  The U.S. Supreme Court has recognized that the proceedings in a delinquency adjudication are sufficiently criminal in nature to warrant certain constitutional protections.  *In re* Gault, 387 U.S. 1 (1967); cf. Neb. Rev. Stat. § 43-279 (enumerating rights of parties in juvenile adjudications, which rights are typical to criminal defendants); State v. Justin V. (*In re* Interest of Justin V.), 797 N.W.2d 755, 768 (Neb. Ct. App. 2011) ("[W]e conclude that it is appropriate to adopt the criminal standard for withdrawal of a plea in the context of a request to withdraw an admission in a juvenile proceeding.").

Nonetheless, we are persuaded that the term "sex offender" has as its "usual accepted meaning," O'Neill Prod. Credit Ass'n v. Schnoor, 302 N.W.2d 376, 378 (Neb. 1981) (quoting State *ex rel.* Finigan v. Norfolk Live Stock Sales Co., 132 N.W.2d 302, 304 (Neb. 1964)), a person who has been convicted of a crime involving unlawful sexual conduct.  Accordingly we conclude that A.W., as a juvenile adjudicated delinquent, does not fall within the meaning of that term and therefore is not subject to SORA under § 29-4003(1)(a)(iv).[3]

_____

[3]We note that even if we found "sex offender" to be ambiguous, leaving us with the choice of selecting between two reasonable constructions, one requiring conviction and one not, we would be strongly inclined to affirm the district court.  We believe the application of SORA and its public notification requirement to juveniles adjudicated delinquent in other jurisdictions but not in Nebraska raises serious constitutional concerns under the rights to travel and to equal protection of the laws.  Of the events triggering application of SORA under NSP regulations–residency, employment, carrying on a vocation, or attending school in Nebraska, 272 Neb. Admin. Code ch. 19 § 003.02–it is highly likely a juvenile would be subject to SORA due to residency.  This raises troubling implications under the third prong of the right to travel, arising from the Privileges and Immunities and the Privileges or Immunities Clauses of the U.S. Constitution, see generally Saenz v. Roe, 526 U.S. 489, 502-04 (1999) (describing strict standard of review for state discrimination against newly arrived citizens); Attorney Gen. of N.Y. v. Soto-Lopez, 476 U.S. 898, 903 (1986) ("A state law implicates the right to travel . . . when it uses 'any classification which

## III. CONCLUSION

We affirm the district court.

_____

serves to penalize the exercise of that right.'" (quoting <u>Dunn v. Blumstein</u>, 405 U.S. 330, 340 (1972)), as well as under the Equal Protection Clause, <u>Soto-Lopez</u>, 476 U.S. at 904.  Further, to the extent the purpose of § 29-4003(1)(a)(iv) is to prevent migration into the state of undesirable citizens, application of SORA to A.W. under that provision may raise other constitutional concerns as well.  <u>Saenz</u>, 526 U.S. at 503 ("The states have not now, if they ever had, any power to restrict their citizenship to any classes or persons." (quoting <u>Slaughter-House Cases</u>, 83 U.S. 36, 112 (1872) (Bradley, J., dissenting))).  Given the choice between two reasonable constructions, we will generally avoid a construction that raises "grave and doubtful constitutional questions."  <u>Union Pac. R.R. Co. v. United States Dep't of Homeland Sec.</u>, 738 F.3d 885, 892 (8th Cir. 2013) (quoting <u>United States <em>ex rel.</em> Attorney Gen. v. Del. & Hudson Co.</u>, 213 U.S. 366, 408 (1909)); <u>see also</u> <u>Norman</u>, 808 N.W.2d at 58 ("It is the duty of a court to give a statute an interpretation that meets constitutional requirements if it can reasonably be done.").