# United States Court of Appeals

## For the Eighth Circuit

_____

No. 20-1006

_____

Metropolitan Omaha Property Owners Association, Inc.; Pierce Carpenter;
Hillcrest Apartments

*Plaintiffs - Appellants*

v.

City of Omaha, Nebraska

*Defendant - Appellee*

_____

No. 20-1851

_____

Metropolitan Omaha Property Owners Association, Inc.; Pierce Carpenter;
Hillcrest Apartments

*Plaintiffs - Appellants*

v.

City of Omaha, Nebraska

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: November 17, 2020
Filed: March 15, 2021

_____

Before BENTON, ERICKSON, and GRASZ, Circuit Judges.

_____

BENTON, Circuit Judge.

Metropolitan Omaha Property Owners Association, Inc., Pierce Carpenter, and Hillcrest Apartments sued the City of Omaha, asserting that the Rental Property Registration and Inspection Ordinance violated their constitutional rights, breached their consent decree with the City, and violated the Fair Housing Act. The district court[1] denied a preliminary injunction, eventually dismissing their claims. They appeal. Having jurisdiction under 28 U.S.C. §§ 1291 and 1292(a)(1), this court affirms.

I.

Metro Omaha, a Nebraska nonprofit corporation, has about 1,000 members that own and operate real property in Omaha, including Carpenter and Hillcrest.

In a prior suit, Metro Omaha claimed that the City conducted unlawful searches and trespassed on rental properties. By a consent decree, Metro Omaha agreed to dismiss its case, and the City agreed to amend the Omaha Municipal Code and adopt standard operating procedures for housing inspections. *See* Consent Decree, ***Metropolitan Omaha Property Owners Association, Inc. v. City of Omaha***, No. 8:13-cv-00230-LSC-FG3 (D. Neb. Mar. 4, 2015) (No. 36) (incorporating the terms of the settlement agreement found at No. 35-2). These procedures are the official policy of the City's Permits and Inspection Division.

_____

[1] The Honorable Laurie Smith Camp, United States District Judge for the District of Nebraska, now deceased.

Four years after the consent decree, the City enacted the Rental Property Registration and Inspection Ordinance (effective January 1, 2020). Its stated purpose is to "implement uniform residential rental property registration, and a regular inspection program that is phased in accordance with the history of code violations on each property," and "to address the issue of substandard rental properties, promote greater compliance with health and safety standards, and preserve the quality of the city's neighborhoods and available housing." **Omaha Code § 48-201(b)**.

The Ordinance requires all rental properties in the City (and three miles outside it) to register with the Permits and Inspections Division before leasing to tenants. **§§ 48-202**, **48-204(a)**. There is no fee to register. **§ 48-205(d)**. To maintain registration, property owners must comply with the requirements of the Ordinance and applicable laws, rules, and regulations. **§ 48-204(c)**.

The Ordinance subjects all registered properties to City inspections. **§ 48-206**. Inspections are annual if properties had an unremedied code violation within three years before the Ordinance's effective date, if they fail to remedy an existing violation, or if they are not timely registered. **§ 48-206(a)**. Properties not inspected annually are inspected once every ten years. **§ 48-206(b)**. Property owners pay $125 for each inspection and for each failure to allow entry for a scheduled inspection (unless the failure is due to a tenant's refusal to consent to the inspection). **§ 48-206(g)**.

Section 48-206(c) outlines the procedure for inspections. Before an inspection, City officials must give the property owner and tenant 14-days advance written notice. **§ 48-206(c)**. The notice must include a form for the tenant "to consent to entry of the rental dwelling, if desired" *Id.* The Section states:

> If either the owner or tenant of the relevant rental dwelling refuses to consent to an inspection, the code official may obtain a warrant or other court order for the inspection in accordance with applicable law, including, but not limited to, Neb. Rev. Stat. sections 29-830 et seq.

*Id.* The City may not penalize a tenant, owner, or manager for a tenant's refusal to consent. *Id.* The City also may not penalize if an inspection is "not conducted because a warrant or other court order cannot be obtained . . . ." *Id.*

Metro Omaha sued the City, invoking 42 U.S.C. §§ 1983, 1985, and 3613. It asserted that the Ordinance violates the Fourth, Fifth, and Fourteenth Amendments, breaches the consent decree, and violates the Fair Housing Act. Metro Omaha moved for preliminary and permanent injunctions. The district court denied both, dismissing its claims. Metro Omaha appeals.

## II.

This court reviews de novo the grant of a motion to dismiss. *Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 512 (8th Cir. 2018). This court "accepts as true the complaint's factual allegations and grants all reasonable inferences to the non-moving party." *Id.* (cleaned up).

To survive a 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *McShane Constr. Co., LLC v. Gotham Ins. Co.*, 867 F.3d 923, 927 (8th Cir. 2017), *quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint "must provide 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.' " *Id.*, *quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*, *quoting Iqbal*, 556 U.S. at 678.

## A.

According to Metro Omaha, the Ordinance violates its constitutional rights to be free from unreasonable searches and seizures under the Fourth and Fourteenth

Amendments. Metro Omaha asserts that the Ordinance authorizes warrantless inspections of properties if consent is withheld.

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," providing "no Warrants shall issue, but upon probable cause." *City of Los Angeles v. Patel*, 576 U.S. 409, 419 (2015). Searches conducted "outside the judicial process, without prior approval by [a] judge" are "*per se* unreasonable." *Id.* (alteration in original) (citations omitted). This "applies to commercial premises as well as to homes." *Id.* at 419–20 (citation omitted). The Fourth Amendment is "enforceable against the States through the Fourteenth Amendment." *Camara v. Mun. Court of City & Cty. of San Francisco*, 387 U.S. 523, 528 (1967).

To determine the constitutionality of ordinances, this court follows the state court's interpretation, or if unavailable, uses that state court's rules of construction. *See A.W. ex rel. Doe v. Nebraska*, 865 F.3d 1014, 1017 (8th Cir. 2017). Because Nebraska courts have not interpreted the Ordinance, this court must apply the Nebraska Supreme Court's rules of construction.

The Nebraska Supreme Court interprets local ordinances using "the same rules as those applied to statutory analysis." *Walsh v. City of Omaha Police & Fire Ret. Sys.*, 763 N.W.2d 411, 412 (Neb. 2009) (citation omitted). Statutory language is given its "plain and ordinary meaning." *A.W.*, 865 F.3d at 1017, *quoting State v. Gilliam*, 874 N.W.2d 48, 56 (Neb. 2016). In "discerning the meaning of a statute," this court "determines and gives effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense." *Id.*, *quoting Farmers Coop. v. State*, 893 N.W.2d 728, 735, *opinion modified on denial of reh'g*, 898 N.W.2d 674 (Neb. 2017).

The Nebraska Supreme Court presumes that the enacting body intended a sensible result; "an appellate court will, if possible, try to avoid a construction which would lead to absurd, unconscionable, or unjust results." *Hayes v. Applegarth*, 631 N.W.2d 547, 549 (Neb. 2001) (citation omitted). Given the choice "between two reasonable constructions," this court "will generally avoid a construction that raises grave and doubtful constitutional questions." *A.W.*, 865 F.3d at 1020 n.3 (internal quotations omitted), *citing State v. Norman*, 808 N.W.2d 48, 58 (Neb. 2012) (it is "the duty of a court to give a statute an interpretation that meets constitutional requirements if it can reasonably be done."). *See generally Baggett v. Bullitt*, 377 U.S. 360, 375 (1964) (stating that the Court generally presumes that a state statute "will be construed in such a way as to avoid the constitutional question presented").

By its plain and ordinary meaning, the Ordinance does not violate Metro Omaha's constitutional rights. The Ordinance does not authorize warrantless inspections of properties if consent is withheld. Under Section 48-206(c), the City must give property owners and tenants notice before a scheduled inspection, allowing them the option to consent or not. If both parties consent, the official may inspect the property. **Omaha Code § 48-206(c)**. "If either the owner or tenant . . . refuses to consent to an inspection, the code official may obtain a warrant or other court order for the inspection in accordance with applicable law . . . ." *Id.* Under this plain language, the official has two options if consent is withheld: (1) the official *may* choose not to inspect, or (2) the official *may* obtain a warrant or other court order, that is, seek a warrant or other court order, and if granted, inspect the property. Neither option authorizes warrantless inspections if consent is withheld.

Metro Omaha proffers a different reading of the text. It argues that under the Ordinance, if consent is withheld, the official may inspect the property with or without a warrant or court order. It reads the phrase "the code official *may* obtain a warrant or other court order for the inspection in accordance with applicable law" to mean that obtaining a warrant is discretionary *and* the official may conduct a warrantless search. Metro Omaha would re-word the Ordinance to say: "if consent

is withheld, the City official *may* either inspect the property *or* obtain a warrant or other court order."

This court rejects Metro Omaha's construction of the Ordinance. Its plain text does not allow warrantless inspections if consent is withheld. The more reasonable reading—that the Ordinance does not authorize warrantless inspections—avoids a construction that raises grave and doubtful constitutional questions. *See A.W.*, 865 F.3d at 1020 n.3, *citing Norman*, 808 N.W.2d at 58. *See also Mann v. Calumet City, Ill.*, 588 F.3d 949, 953 (7th Cir. 2009) ("We cannot think of what more could reasonably be required to protect the homeowner's rights, including his Fourth Amendment rights, which the ordinance's warrant provisions fully protect.").

Metro Omaha argues that the Ordinance violates its Fourth Amendment rights because it does not mandate pre-compliance review before inspections. True, the Supreme Court emphasizes the importance of pre-compliance review before *warrantless* inspections. *See Patel*, 576 U.S. at 420. This requirement does not apply here, where inspections are permitted only if there is consent, a warrant, or court order.

Metro Omaha also argues that the Ordinance punishes property owners for withholding consent to searches. *See Coates v. City of Cincinnati*, 402 U.S. 611, 616 (1971) (stating that under the constitutional conditions doctrine, an ordinance may not make "a crime out of what under the Constitution cannot be a crime."). To the contrary, the Ordinance says that property owners may not be penalized if "an inspection is not conducted because a warrant or other court order cannot be obtained . . . ." **§ 48-206(c)**. By withholding consent, property owners are not subject to criminal liability or prohibited from renting their property. Metro Omaha fails to plausibly plead a violation of the Fourth and Fourteenth Amendments.

B.

According to Metro Omaha, the Ordinance is unconstitutionally vague in violation of the Fifth Amendment. The Fifth Amendment "guarantees every citizen the right to due process." *United States v. Birbragher*, 603 F.3d 478, 484 (8th Cir. 2010) (citation omitted). "Stemming from this guarantee is the concept that vague statutes are void." *Id.* (citation omitted).

A penal statute[2] is "unconstitutionally vague" if it "fails to define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *United States v. Barraza*, 576 F.3d 798, 806 (8th Cir. 2009) (internal quotations omitted) (citations omitted). A two-part test determines whether a statute is vague: "The statute must first provide adequate notice of the proscribed conduct, and second, not lend itself to arbitrary enforcement." *Id.* (citation omitted).

Metro Omaha focuses its Fifth Amendment challenge on Section 48-204(c):

To maintain a registration in effect requires ongoing compliance with applicable requirements of this article and other laws, rules and regulations during the duration of the registration, including ongoing compliance with the IPMC [International Property Maintenance Code] and other requirements that are the subject of periodic inspections hereunder or under other applicable laws, rules, or regulations. Any deficiency or failure to comply shall be subject to such actions, orders, rights and remedies of the code official as set forth in this article, the IPMC or other applicable laws, rules or regulations as enacted or amended from time to time, up to and including issuance of notices or orders under chapter 48 or other applicable chapters of this Code, charges, and issuance or assessment of citations, fines, penalties and/or

---

[2]The district court and the parties do not discuss whether the Ordinance is a penal statute. This court need not address the issue.

-8-

criminal prosecutions, all of which shall be carried out in accordance with applicable law.

Metro Omaha asserts that this gives City officials unlimited discretion to initiate severe penalties for any deficiencies under the Ordinance, IMPC, and "other unknown, unidentified, and even non-existent" laws, rules, and regulations.

The Ordinance is not unconstitutionally vague. First, the ordinance provides adequate notice of the proscribed conduct. Any "citations, fines, penalties and/or criminal prosecutions" must be for violations of the Omaha Municipal Code, the IPMC, and other "applicable laws, rules, or regulations." *See* **§ 48-204(c)**. If property owners comply with applicable laws, rules, and regulations, they avoid penalties under the Ordinance. This is not the case of "wholly subjective judgments without statutory definitions, narrowing context, or settled legal meanings." ***Holder v. Humanitarian Law Project***, 561 U.S. 1, 20 (2010) (citations omitted). Property owners have adequate notice of the laws, rules, and regulations that proscribe their conduct.

Second, the Ordinance does not lend itself to arbitrary enforcement. The City may penalize property owners only for violations of applicable laws, rules, and regulations. It may not penalize for violations of inapplicable laws, rules, and regulations. Further, the Ordinance has an appeal procedure if property owners disagree with any decision: "Any person aggrieved by any decision or order by the city under this article may appeal the same to the property maintenance appeals board . . . ." **§ 48-208**. This procedure acts as a check on wrongful decisions or orders. Metro Omaha fails to plausibly plead a Fifth Amendment violation.

C.

Metro Omaha argues that the Ordinance breaches its consent decree with the City. It asserts that the consent decree requires the City to receive a complaint before initiating an inspection. To analyze this claim, this court must interpret the consent

decree and incorporated settlement agreement. The scope of this interpretation is limited to the decree's "four corners" and the decree must be "sufficiently specific to be enforceable." *United States v. Armour & Co.*, 402 U.S. 673, 682 (1971); *Hazen v. Reagen*, 16 F.3d 921, 924 (8th Cir. 1994).

After Metro Omaha and the City settled the prior case, the City adopted a standard operating procedure for housing-violation complaints. The procedure states, "Complaints will be taken" by the City, and all complaints must contain the name and phone number of the complainant, and the address and nature of the complaint. The complainant's identity and certain complaint information must be disclosed, upon request, to the property owner.

Metro Omaha believes that the Ordinance directly conflicts with the standard operating procedure for taking complaints. The Ordinance says:

> Inspections provided under this article shall be in addition and supplemental to any other inspection or access authorized under applicable law. Inspections may also be conducted at other times as the code official determines necessary, including inspections initiated because of a complaint or other means outside of the inspection program of this article.

**§ 48-206(i)**. According to Metro Omaha, this language disregards a requirement in the standard operating procedure that the receipt of a complaint is a prerequisite to an inspection.

The consent decree's four corners do not support Metro Omaha's argument. The standard operating procedure does not prohibit the City from initiating an inspection of a property without a complaint. The standard operating procedure is not sufficiently specific to require complaints as a prerequisite to all inspections. Where a prerequisite is not in the consent decree's four corners, this court will not require it. *See Armour & Co.*, 402 U.S. at 682.

-10-

Further, the consent decree did not prospectively prevent the City from enacting future ordinances (such as the Ordinance) that add additional inspection procedures. The consent decree amended the Omaha Municipal Code as it existed before the enactment of the Ordinance. The settlement agreement does not prohibit the City from modifying the Code after settlement. The settlement agreement also allows the City to modify the standard operating procedures "as necessary to accommodate changes or updates in . . . code changes [or] changes in circumstances . . . , provided that the essential protections and safeguards granted to the property owners are not impaired." Because the settlement agreement does not require complaints as a prerequisite to all inspections, they are not an essential protection or safeguard in the settlement agreement.

Metro Omaha also argues that the Ordinance breaches the consent decree's requirement that all inspections comply with Section 48-34 of the Omaha Municipal Code. That section authorizes City officials to enter the interior of a structure or unit for inspection only if there is consent from the owner or occupant, an emergency, or an authorizing warrant or court order. **§ 48-34(c)**. Because the Ordinance, as discussed, does not authorize warrantless inspections of properties, it does not conflict with Section 48-34. Metro Omaha fails to plausibly plead a breach of the consent decree.

D.

According to Metro Omaha, the Ordinance violates the Fair Housing Act. It asserts that the Ordinance results in disparate treatment and disparate impact on minority tenants in Metro Omaha's owned and managed properties, and on property owners subject to the Ordinance.

Under the FHA, it is illegal to "make unavailable or deny[] a dwelling to any person because of race, color, religion, sex, familial status, or national origin." **42 U.S.C. § 3604(a)** (comma omitted). The FHA prohibits discriminatory municipal government acts. *Gallagher v. Magner*, 619 F.3d 823, 831 (8th Cir. 2010).

-11-

1.

Metro Omaha argues that the Ordinance results in disparate treatment of minority tenants and of property owners renting to them. Metro Omaha must thus show that the City "treat[ed] the plaintiff(s) less favorably than others based on their race, color, religion, sex or national origin." *Id.* (alteration added). Proof of "discriminatory purpose" is "crucial for a disparate treatment claim." *Id.* (citation omitted). Without a showing of intent, a showing of "discriminatory impact alone is not determinative outside of 'rare' cases where the pattern of discriminatory effect is 'stark.' " *Id.* at 833, *quoting **Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.**,* 429 U.S. 252, 266 (1977).

Metro Omaha does not plead facts showing "a specific link between the alleged discriminatory animus and the challenged decision[] sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motived the adverse [] action." *Id.* at 831 (alterations added) (citation omitted). It also fails to plausibly plead that this is a rare case where the discriminatory effect is so stark as to evidence discriminatory intent. *See id.* at 833. Metro Omaha's specific allegation of mistreatment of refugee tenants is not related to the Ordinance, and does not permit a plausible inference that the City had a discriminatory purpose in enacting the Ordinance. The intensity of the discriminatory effect is not sufficiently pled here. Metro Omaha fails to plausibly plead a disparate treatment claim under the FHA.

2.

Metro Omaha asserts that the Ordinance results in a disparate impact on minority tenants and property owners subject to the Ordinance. To prove disparate impact, Metro Omaha must plead that "a facially neutral policy ha[d] a significant adverse impact on members of a protected minority group." *Id.* (alteration in original) (citation omitted). Metro Omaha is "not required to show that the

[Ordinance] was formulated with discriminatory intent" to prove disparate impact. *Id.* (alteration added) (citations omitted).

Metro Omaha has not alleged a plausible disparate impact claim. Its amended complaint states that the Ordinance will result in disparate impact on minority tenants, increase the cost of housing for minority tenants, and reduce the quantity and quality of housing available to minority tenants (and property owners renting to minority tenants). But Metro Omaha "cannot make out a prima facie case of disparate impact" because it "fails to allege facts at the pleading stage demonstrating a causal connection" between the policy and the disparity. *Ellis v. City of Minneapolis*, 860 F.3d 1106, 1112 (8th Cir. 2017) (cleaned up). *See McShane*, 867 F.3d at 927. Metro Omaha fails to plausibly plead a disparate impact claim under the FHA.[3]

\* \* \* \* \* \* \*

The judgment is affirmed.

_____

---

[3]For the reasons stated in this opinion, the district court did not abuse its discretion in denying the preliminary injunction.

-13-